## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

PUBLIC EMPLOYEES RETIREMENT
ASSOCIATION OF NEW MEXICO,

      Plaintiff,

vs.                                                                                    No. CIV 11-0931 JB/WDS

CLEARLEND SECURITIES f/k/a
WACHOVIA GLOBAL SECURITIES
LENDING f/k/a METROPOLITAN WEST
SECURITIES, L.L.C.; WACHOVIA BANK,
N.A.; and WELLS FARGO & COMPANY,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion to Remand the Case to State Court and for the Payment of Costs and Expenses Including Attorney's Fees, filed November 17, 2011 (Doc. 5)("Second Motion to Remand"). The Court held a hearing on April 4, 2012. The primary issues are: (i) whether the Court has jurisdiction to decide the Second Motion to Remand; (ii) whether Plaintiff Public Employees Retirement Association ("PERA") is an arm of the State of New Mexico, such that the Court should remand the case to state court; and (iii) if the Court should so rule, whether the Court should award the PERA the attorney's fees and costs associated with its motion to remand pursuant to 28 U.S.C. § 1447(c). The Court will grant in part and deny in part the Second Motion to Remand. The Court finds that it has the authority to decide the Second Motion to Remand. The Court finds that the PERA is an arm of the state and therefore not a citizen of New Mexico for the purposes of diversity jurisdiction. The Court will therefore remand this case to state court based on its lack of subject-matter jurisdiction. The Court will not, however, order that the

Defendants bear the PERA's costs and expenses, including attorney's fees, pursuant to 28 U.S.C. § 1447(c), because the Court concludes that the Defendants had an objectively reasonable basis for seeking removal.

## PROCEDURAL BACKGROUND

The PERA originally filed this case in the First Judicial District Court, County of Santa Fe, State of New Mexico on October 20, 2010.  See Pub. Emps. Ret. Ass'n of N.M. v. Clearlend Sec., No. CIV 10-1102, Complaint for Breach of Contract and Breach of Fiduciary Duty (dated October 20, 2010), filed November 18, 2010 (Doc. 1-1)("Complaint").  In the first Count of the Complaint, the PERA alleges a breach of contract against the Defendants for purchasing notes from "non-United States issuers."  Complaint at 18.  It asserts that its contract required that "(a)ll cash investment Collateral must be made in U.S. dollars and be from domestic U.S. issuers only," and that the Defendants violated this provision when they purchased notes from Victoria Finance, Ltd and Sigma Finance Corporation, because those structured investment vehicles are not domestic United States issuers.  Complaint ¶ 83, at 18.  In its second Count, the PERA alleges a breach of contract for failure to exercise the required standard of care.  See Complaint at 19.  The PERA asserts that "Wachovia held itself out 'as an expert in the handling of investments of large trust funds and in the handling of securities lending programs,' and 'represented itself as being possessed of greater knowledge and skill than the average person.'"  Complaint ¶ 88, at 19.[1]  The PERA further asserts that the Defendants breached their duty "by failing to execute [their] obligations of the Contract as an expert and a fiduciary and failing to conduct due diligence before purchasing the notes in Victoria and Sigma."  Complaint ¶ 89, at 19.  In its third Count, the PERA alleges a breach of fiduciary duty

---

[1]The PERA specifies that, for the purposes of the Complaint, "all Defendants are collectively referred to as 'Wachovia.'" Complaint ¶ 5, at 2.

for failing to conduct due diligence.  See Complaint at 20.  It asserts that the "discretionary investment relationship between Wachovia and PERA created a fiduciary duty to manage the fund's investments with the utmost good faith requiring a specific duty of care."  Complaint ¶ 94, at 20. The PERA contends that the Defendants breached their fiduciary duty to the PERA "by failing to conduct due diligence prior to investing in the risk medium-term notes, especially given that protecting PERA's principal was the primary investment objective of the securities lending agreement."  Complaint ¶ 97, at 20.  In Count 4, the PERA alleges a breach of fiduciary duty for failing to sell the medium term notes.  See Complaint at 20.  The PERA contends that, as a fiduciary, "Wachovia was also required to monitor PERA's investments" and that "Wachovia breached its fiduciary duty by failing to conduct due diligence as red flags repeatedly appeared and recommending that PERA not sell the notes."  Complaint ¶¶ 100-01, at 20.

On November 18, 2010, the Defendants removed that case to the United States District Court for the District of New Mexico, and the case was assigned to the Honorable John E. Conway, Senior United States District Judge.  See Pub. Emps. Ret. Ass'n of N.M. v. Clearlend Sec., No. CIV 10-1102, Notice of Removal, filed November 18, 2010 (Doc. 1)("First Notice of Removal").  The Defendants asserted that there was federal jurisdiction under 28 U.S.C. § 1332, because there was diversity of citizenship and because the amount in controversy exceeded $75,000.00.  See First Notice of Removal ¶ 4, at 2.  The PERA then filed a motion to remand.  See Pub. Emps. Ret. Ass'n of N.M. v. Clearlend Sec., No. CIV 10-1102, Motion to Remand the Case to State Court and For the Payment of Costs and Expenses Including Attorneys' Fees, filed December 20, 2010 (Doc. 8)("First Motion to Remand").  The PERA argued that the Defendants had failed to prove that the PERA is a "citizen" of New Mexico and contended that the PERA is an arm of the state.  See First Motion to Remand at 9.  On July 18, 2011, Judge Conway granted in part and denied in part the First Motion

to Remand.  See Pub. Emps. Ret. Ass'n of N.M. v. Clearlend Sec., No. CIV 10-1102, Memorandum

Opinion and Order at 12-13, filed July 18, 2011 (Doc. 39)("Conway MOO").  Judge Conway found

that the Defendants had "not sufficiently alleged diversity of citizenship in their Notice of removal,

the removal was premature and discovery is not permissible in this Court because no dispute exists

regarding the facts as stated."  Conway MOO at 12.  He noted his concern "regarding the litigation

tactics that appear to be at work on both sides of the matter" and held that he could not "say that

Defendants had no objectively reasonable basis for removing."  Conway MOO at 12.

       1.       **Second Notice of Removal.**

       On October 18, 2011, the Defendants filed a second Notice of Removal to the United States

District Court for the District of New Mexico.  See Doc. 1 ("Second Notice of Removal").  The

Defendants assert that "[o]riginal jurisdiction exists in this Court pursuant to 28 U.S.C. § 1332

because (a) the amount in controversy exceeds $75,000, exclusive of interest and costs; and

(b) complete diversity of citizenship exists between Defendants and PERA."  Second Notice of

Removal ¶ 8, at 3.  They argue that, in the Complaint, the PERA seeks "damages in excess of

$75,000 in that PERA alleges a total of $102.8 million in realized and unrealized investment losses."

Second Notice of Removal ¶ 9, at 3.  The Defendants assert that: (i) Defendant Clearlend Securities,

as a division of Defendant Wells Fargo & Company, does not possess citizenship separate and apart

from Wells Fargo; (ii) Wells Fargo is a citizen of Delaware and California; and (iii) Defendant

Wachovia Bank, N.A., which merged with Wells Fargo Bank, N.A. in March 2010, is a citizen of

South Dakota.  See Second Notice of Removal ¶¶ 10-11, at 3-4.

       The Defendants then argue that the PERA is a citizen of the State of New Mexico.  See

Second Notice of Removal at 4.  They assert that the PERA is "an entity organized under the laws

of the State of New Mexico with its principal place of business in New Mexico."  Second Notice

of Removal ¶ 12, at 4.  The Defendants acknowledge that "states are not considered 'citizens' for diversity purposes under 28 U.S.C. § 1332 because the Eleventh Amendment's sovereign immunity bars private parties from suing a state in federal court."  Second Notice of Removal ¶ 13, at 4.  They argue, however, that "entities such as PERA that are connected with the state or formed under state statute do not always share in their state's immunity."  Second Notice of Removal ¶ 13, at 4 (citing Sturdevant v. Paulsen, 218 F.3d 1160, 1164 (10th Cir. 2000)).  The Defendants assert that those entities which do not share in the state's Eleventh Amendment immunity are "citizens of the state in which they are located and are subject to diversity jurisdiction in federal court."  Second Notice of Removal ¶ 14, at 5 (citing Sherman v. Curators of Univ. of Mo., 16 F.3d 860, 862 n.2 (8th Cir. 1994)).  They further assert that the United States Court of Appeals for the Tenth Circuit has established a five-factor test to determine whether an agency is an arm of the state: (i) whether a judgment against the governmental unit would be payable out of the state treasury or out of the governmental's unit's own funds; (ii) the characterization of the governmental unit under state law; (iii) the guidance and control that the state exercises over the governmental unit; (iv) the degree of funding that the state gives the governmental unit; and (v) the governmental unit's ability to issue bonds and levy taxes on its own behalf.  See Second Notice of Removal ¶ 16, at 5 (citing Lucero v. N.M. Lottery, No. 07-499, 2008 WL 7467977 (D.N.M. July 7, 2008)(Herrera, J.)).  The Defendants contend that a number of courts have held that "other retirement systems similar to PERA are not 'arms' of the state that created them . . . largely due to their fiscal autonomy and the lack of an obligation on the state's part to pay the systems' debts."  Second Notice of Removal ¶ 17, at 6 (citing Roche v. Lincoln Prop. Co., 175 F.App'x 597, 600-01 (4th Cir. 2006)(unpublished); Blake v. Kline, 612 F.2d 718, 721-26 (3d Cir. 1979); Rivera-Torres v. Sistema de Para Maestros, Inc., 453 F.Supp.2d 383, 386-87 (D.P.R. 2006); Accenture LLP v. CSDV-MN Ltd. P'ship, No. 06-1270, 2006

WL 3825029, at *2-3 (N.D. Ill. Dec. 27, 2006); Travelers Ins. Co. v. Teacher Ret. Sys. of Tex., No.

92 C 6651, 1993 WL 34757, at *3-5 (N.D. Ill. Feb. 5, 1993); Almond v. Boyles, 612 F.Supp.2d 223,

227-28 (E.D.N.C. 1985); Bowen v. Hackett, 387 F.Supp. 1212, 1216-23 (D.R.I. 1975)).   The

Defendants further assert that this Court and the Honorable Judith C. Herrera, United States District

Judge, have previously found "entities created by the State of New Mexico not to be 'arms' of the

state."  Second Notice of Removal ¶ 18, at 8 (citing Lucero v. New Mexico Lottery, 2008 WL

7467977, at *2-5; Jornigan v. N.M. Mut. Cas. Co., No. 03-0813, 2004 WL 3426120, at *6-8

(D.N.M. July 14, 2004)(Browning, J.)).

With respect to the PERA, the Defendants argue that the State is not liable for any judgment

against the PERA.  See Second Notice of Removal at 9.  They assert that the question of state-

treasury liability requires a court to "focus on legal liability for a judgment, rather than practical, or

indirect, impact a judgment would have on a state's treasury."  Second Notice of Removal ¶ 19, at

9 (citing Duke v. Grady Mun. Schs., 127 F.3d 972, 981 (10th Cir. 1997)).  They contend that,

because the PERA would be liable for a judgment against it, it is not an arm of the state.  See Second

Notice of Removal ¶ 19, at 9.  The Defendants assert that: (i) the PERA is completely self-funded

and does not receive general appropriations from the State; (ii) the PERA's enabling legislation, the

Public Employees Retirement Act, N.M.S.A. § 10-11-1 (the "PERA Act"), contains no provision

requiring the State to satisfy any judgment or cover any funding shortfall; (iii) the only

indemnification provision in the PERA Act indemnifies the PERA's Board members out of the

PERA's funds; and (iv) to offset the cost of any judgment, the Risk Management Division of New

Mexico's General Services Department provides insurance coverage.  See Second Notice of

Removal ¶¶ 19-24, at 10-11 (citing N.M.S.A. 1978, §§ 10-11-123 to -129.1, 10-11-132; Deposition

of Susan G. Pittard at 27:1-28:25; 37:1-40:25 (dated October 5, 2011), filed October 18, 2011 (Doc.

1-23)("Pittard Depo.")).  The Defendants argue that no statute characterizes the PERA as an arm of

the state.  <u>See</u> Second Notice of Removal ¶¶ 25-27, at 10-11.

  The Defendants contend that the PERA exercises considerable autonomy in managing its

day-to-day activities.  <u>See</u> Second Notice of Removal at 12.  The Defendants assert that the PERA:

(i) has "all powers necessary or convenient to carry out and effectuate the purposes and provisions

of the state retirement system acts"; (ii) may employ or contract with and compensate competent

legal counsel to handle legal matters and litigation; (iii) may sue and be sued; (iv) may administer

oaths; (v) may create and maintain records relating to all members, affiliated public employers, and

all activities and duties required of the Board; (vi) may issues subpoenas, and compel the production

of evidence and attendance of witnesses in connection with any hearings or proceedings of the

Board; (vii) may make and execute contracts; (viii) may purchase, acquire or hold land; (ix) may

make and adopt rules as necessary or convenient to carry out the PERA's duties; (x) may designate

committees and committee members; (xi) may select and contract for the services of one or more

custodian banks; (xii) may adopt rules governing the election of members of the Board; and

(xiii) may formulate investment policy and retain outside investment management.  Second Notice

of Removal ¶¶ 29-30, at 13-14 (citing N.M.S.A. 1978, § 10-11-130(A)).  The Defendants note that

ten of the twelve Board members are elected from the membership, that the other two ex officio

members are the Secretary of State and the State Treasurer, and that Board members may only be

removed for cause, and not by the Governor or another state official.  <u>See</u> Second Notice of

Removal ¶¶ 31-32, at 14-15 (citing N.M.S.A. 1978, §§ 10-11-130(B), 10-11-131(A); Pittard Depo.

21:1-26:25).  They argue that the PERA was designed to be a self-sustaining fund, and is

"completely self-funded through member and employer contributions, investment income, gifts,

bequests, and any other money taken into the funds administered by PERA."  Second Notice of

Removal ¶ 36, at 16.  Finally, the Defendants argue that "all New Mexico state court judges are beneficiaries of the retirement plans for which PERA is responsible and thus would have a financial interest in this case."  Second Notice of Removal ¶ 42, at 17.

### 2.    Second Motion to Remand.

The PERA moves for an order remanding this case to state court, and directing the Defendants to pay "just costs and any actual expenses including attorney fees, incurred as a result of removal."  Second Motion to Remand at 9 (citing 28 U.S.C. § 1447(c)).  The PERA argues that it is an arm of the state for the purposes of diversity jurisdiction, and asserts that at least seventeen federal courts have found that sixteen different pension plans, like the PERA, are arms of the state. See Second Motion to Remand at 5 & n.2 (citing Burrell v. Teacher's Ret. Sys. of Ala., 353 F.App'x 182, 183 (11th Cir. 2009)(unpublished); Ernst v. Rising, 427 F.3d 351, 359-61 (6th Cir. 2005); McGinty v. New York, 251 F.3d 84, 96 (2d Cir. 2001); Fitzpatrick v. Bitzer, 519 F.2d 559, 561 (2d Cir. 1975); W. Va. Inv. Mgmt. Bd. v. Residential Accredited Loans, Inc., No. 2:10-cv-00461, 2010 WL 3418314, at *5 (S.D.W. Va. Aug. 26, 2010); Mo. State Emps.' Ret. Sys. v. Credit Suisse, N.Y. Branch, No. 09-4224-CV-C-NKL, 2010 WL 318652, at *6 (W.D. Mo. Jan. 21, 2010); Cal. Pub. Emps. Ret. Sys. v. Moody's Corp., Nos. C 09-03682 SI, C 09-03629, 2009 WL 3809816, at *2-8 (N.D. Cal. Nov. 10, 2009); JMB Grp. Trust IV v. Pa. Mun. Ret. Sys., 986 F.Supp. 534, 538 (N.D. Ill. 1997); Kan. Pub. Emps. Ret. Sys. v. Boatmen's First Nat'l Bank of Kan. City, 982 F.Supp. 806 (D. Kan. 1997)).  It asserts that there is a strong presumption against removal and that an analysis of the relevant factors will demonstrate that the PERA is an arm of the state.  See Second Motion to Remand at 6.  The PERA further asserts that whether an entity is an arm of the state "is determined by examining the powers, nature, and characteristics of the agency under state law." Second Motion to Remand at 14 (citing Robertson v. Morgan Cnty. Bd. of Cnty. Comm'rs, 166 F.3d

1222 (10th Cir. 1999)).  It contends that the Tenth Circuit requires that a district court examine

> whether a judgment against any particular entity would be payable by the state, and
> then examine[] the following additional factors: (1) the characterization of the
> governmental unit under state law; (2) the guidance and control exercised by the
> state over the governmental unit; (3) the degree of state funding received; and (4) the
> governmental unit's ability to issue bonds and levy taxes on its own behalf.

Second Motion to Remand at 14-15 .

The PERA contends that the factors weigh heavily in favor of finding that it is an arm of the

state and that the Court should remand the case.  See Second Motion to Remand at 15.  It asserts that

courts generally consider whether the state is liable for a judgment against the entity the "most

salient factor" in the arm-of-the-state analysis.  Second Motion to Remand at 15 (citing Hess v. Port

Auth. Trans-Hudson Corp., 513 U.S. 30, 48 (1994)).  It argues that "Wachovia blindly removed this

case without articulating a single fact in support of its position that this factor weighs in its favor."

Second Motion to Remand at 15.  The PERA asserts that "the fact that the Legislature has remained

silent on this issue and the details of PERA's contribution structure demonstrate that, ultimately, the

State is liable for judgments against PERA."  Second Motion to Remand at 15.  It points out that the

Tenth Circuit has held that a district court should ask "whether the state treasury would be at risk

of paying a judgment" against the PERA.  Second Motion to Remand at 15 (emphasis in

original)(citing Duke v. Grady Mun. Schs., 127 F.3d at 980).  It argues that, consistent with the fact

that the PERA is an arm of the state, the PERA Act is silent regarding legal liability for a judgment

against the PERA and notes that the governing statutes for two other pension funds -- the

Educational Retirement Board of New Mexico ("ERB") and the State Investment Council of New

Mexico ("SIC") -- are silent regarding liability against the State.  See Second Motion to Remand at

16 (citing N.M.S.A. 1978, §§ 6-8-1, 22-11-1).  The PERA asserts that courts have held that there

is "no question" that the ERB and SIC are arms of the state.  Second Motion to Remand at 16 (citing

N.M. ex rel. Nat'l Educ. Ass'n of N.M. v. Austin Capital Mgmt., Ltd., 671 F.Supp.2d 1248, 1252 (D.N.M. 2009)(Black, C.J.)).  The PERA argues that, in a provision governing the New Mexico Lottery Authority, the New Mexico Legislature explicitly absolved the State from liability against the entity and provided: "No appropriations, loans or other transfer of state funds shall be made to the authority or used or obligated to pay the expenses of the authority or lottery prizes."  Second Motion to Remand at 16-17 (citing N.M.S.A. 1978, § 6-24-25; Lucero v. N.M. Lottery, 2008 WL 7467977, at *2).  The PERA similarly points out that the New Mexico Legislature protected the State from liability related to the New Mexico Mutual Casualty Company ("NMMCC").  Second Motion to Remand at 17 (citing Jornigan v. N.M. Mut. Cas. Co., 2004 WL 3426120, at *8).  It asserts that the New Mexico Legislature "made clear that the finances of the N.M.M.C.C. and the State were to remain, at all times, entirely separate," and argues that the PERA is a public pension plan for which the State makes significant contributions, over which the State has significant control of distributions, and whose Board members are indemnified.  Second Motion to Remand at 18.  The PERA further asserts that any judgment against it would be paid out of the State-paid Employer Accumulation Fund or would be paid out of the insurance that the State's Risk Management Division provides.  See Second Motion to Remand at 19 & n. 5.  It argues that the Tenth Circuit has held that similar participation in the state's risk management fund indicates that the state would satisfy any judgment against the entity.  See Second Motion to Remand at 19 n.5 (citing Watson v. Univ. of Utah Med. Ctr., 75 F.3d 569, 575 (10th Cir. 1996)).

The PERA also argues that it is characterized as a state agency whose function is inseparable from the State's affairs.  See Second Motion to Remand at 20.  It asserts that the PERA Act is "replete with mandates that forge a permanent bond between PERA and the State," including: (i) the requirement that the PERA obtain a warrant from the New Mexico Secretary of Finance and

Administration before disbursing funds; (ii) provisions encouraging the PERA to seek investment advice from the SIC and/or State Investment Officer; (iii) the requirement that the Board provide quarterly financial reports to the New Mexico Legislative Finance Committee and to the New Mexico Department of Finance and Administration; (iv) that the State Treasurer is the PERA's treasurer and custodian of the PERA's funds; (v) provisions requiring that the State Cash Manager inventory the PERA's funds and provide the PERA, the State Board of Finance, the Legislative Finance Committee, and the SIC with monthly reports; (vi) that the New Mexico Attorney General is the Board's legal advisor; and (vii) that the State makes substantial contributions under the PERA Act as an "affiliated public employer."  Second Motion to Remand at 22 (citing N.M.S.A. 1978, §§ 8-6-3.1, 10-11-133(A)-(D), 10-11-15 to -43.6).  It also notes that its operations are statewide in scope.  See Second Motion to Remand at 22 (citing Pub. Sch. Ret. Sys. of Mo. v. State St. Bank & Trust Co., 640 F.3d 821, 829 (8th Cir. 2011); McGinty v. New York, 251 F.3d at 98).  It also contends that the Legislature could have specifically designated the PERA as an independent entity. See Second Motion to Remand at 23.  The PERA argues that the New Mexico courts have routinely characterized the PERA as a state agency, or treated it as such, rather than as a political subdivision or agency independent of the State.  See Second Motion to Remand at 24 (citing Gill v. Pub. Emps. Ret. Bd., 135 N.M. 472, 475, 90 P.3d 491, 494 (2004); Rainaldi v. Pub. Emps. Ret. Bd., 115 N.M. 650, 651, 857 P.2d 761, 762 (1993); Talamante v. Pub. Emps. Ret. Bd., 139 N.M. 226, 228, 131 P.3d 76, 78 (Ct. App. 2005); State ex rel. Pub. Emps. Ret. Bd. v. Longacre, 131 N.M. 156, 159, 33 P.3d 906, 909 (Ct. App. 2001)).  It further asserts that it has represented the State as a "statutory agent" in a federal suit.  Second Motion to Remand at 24 (citing Pubs. Emps. Ret. Bd. v. Shalala, 153 F.3d 1160 (10th Cir. 1998)).  It contends that it fits "squarely within" New Mexico's definition of a "state agency": "the state of New Mexico or any of its branches, agencies, departments, boards,

instrumentalities, or institutions." Second Motion to Remand at 24 (citing N.M.S.A. 1978, §§ 8-6-3.1, 41-4-3). The PERA argues that, in an "overwhelming number of cases, courts have held that the characterization of a public entity as a 'state agency' favors finding that the entity is an arm of the state." Second Motion to Remand at 24.

The PERA asserts that the PERA Act places substantial restrictions on its autonomy and its ability to act without the guidance and control of the State. See Second Motion to Remand at 25. It notes that the PERA Act requires that the Board hold meetings four times each year, requires a majority of the quorum to make any decision, and requires each meeting comply with the Open Meetings Act, N.M.S.A. 1978, § 10-15-1 to -4. See Second Motion to Remand at 25 (citing N.M.S.A. 1978, § 10-11-130(G)). The PERA further asserts that the Board's investment activities are "authorized by state statute and subject to stringent monitoring controls by the State." Second Motion to Remand at 26. It argues that, when similar restrictions on financial independence have been imposed on other pension plans, those restrictions "have been found to tip the balance in favor of the arm of the state status." Second Motion to Remand at 26 (citing Ernst v. Rising, 427 F.3d at 360; Turner v. State of Ind. Teachers' Ret. Fund, 1:07-CV-1637, 2008 WL 2324114, at *3 (S.D. Ind. June 5, 2008)). It contends that it so lacks in financial independence that the "Board does not even have the power to draw and disburse funds on its own," and must instead seek the State Treasurer's approval. Second Motion to Remand at 26 (citing N.M.S.A. § 10-11-131(D)). The PERA also asserts that all disbursements may be made only upon warrants from the New Mexico Secretary of Finance and Administration, and that, where such responsibilities are bestowed on state officers, "courts have held that such control lends [sic] even further toward the entity being considered an arm of the state." Second Motion to Remand at 25-26 (citing Ernst v. Rising, 427 F.3d at 360; McGinty v. New York, 251 F.3d at 98). The PERA notes that two of its Board members are state

officials and that a "State's appointment power, even if limited, restricts an entity's political independence." Second Motion to Remand at 27 (citing Pub. Sch. Ret. Sys. of Mo. v. State St. Bank & Trust Co., 640 F.3d 828-29). It argues that the powers granted to it under the PERA Act "merely enable it to operate effectively as a retirement system," and "are in no way dispositive as to whether or not this factor favors an arm of the state determination." Second Motion to Remand at 28.

The PERA argues that it is not a self-sustaining fund, but that member contributions, from the State and other employers, and investment earnings fund it. See Second Motion to Remand at 28. It contends that, because the State's contributions form a significant portion of the PERA's funding, this factor weighs in favor of finding that it is an arm of the state. See Second Motion to Remand at 28. It represents that, for almost half of the PERA's total membership, which is approximately 39,365 people, the State must make contributions to the PERA. See Second Motion to Remand at 28. It states that, when the State makes its contributions to the PERA, they are placed in the Employer Accumulation Fund, into which the PERA must tap if there is a shortfall. See Second Motion to Remand at 29. It asserts that this contribution scheme is nearly identical to the pension fund that the United States Court of Appeals for the Second Circuit found was an arm of the state in McGinty v. New York. See Second Motion to Remand at 29. The PERA argues that state money does not lose its character when commingled with other contributions. See Second Motion to Remand at 29 (citing Cal. Pub. Emps. Ret. Sys. v. Moody's Corp., 2009 WL 3809816, at *4).

The PERA asserts that it cannot issue bonds or levy taxes, and that the "significance of this factor cannot be understated because 'such powers generally indicate that an entity can cover its own debts.'" Second Motion to Remand at 30 (citing Pub. Sch. Ret. Sys. of Mo. v. State St. Bank & Trust Co., 640 F.3d at 831). It contends that the inability to raise funds on its own behalf to cover

debts is unique to arms of the state, because they can rely on the State, and that entities without these powers have "overwhelmingly been found to be arms of the state."  Second Motion to Remand at 30 (citing Steadfast Ins. Co. v. Agric. Ins. Co., 507 F.3d 1250, 1255 (10th Cir. 2007);  Sturdevant v. Paulsen, 218 F.3d at 1170).

The PERA then argues that the Second Notice of Removal has "needlessly delayed resolution of this case, added unnecessary expense, and wasted the Court's limited judicial resources."  Second Motion to Remand at 30.  It asserts that 28 U.S.C. § 1447(c)'s goal is to deter improper removal, and that "[a]ssessing costs and fees on remand reduces the temptation to use removal as a method for delaying litigation and imposing costs on the plaintiff."  Second Motion to Remand at 31 (citing Martin v. Franklin Capital Co., 546 U.S. 132, 140 (2005)).  It contends that "Wachovia's inexplicable second detour into federal court is precisely what § 1447(c) seeks to deter" and that the Defendants have exposed the PERA to significant added expense.  Second Motion to Remand at 31.  It asserts that the Defendants' "abuse of the judicial process" is particularly breathtaking, because "[u]nique to the backdrop of this case is the presence of overwhelming authority establishing that state pension programs have been found to be 'arms of the state' by virtually every court considering that question."  Second Motion to Remand at 23-24 (citing Conway MOO at 7).  It states that the Second Notice of Removal is "nothing more than a ploy to add unnecessary expense and delay to this case."  Second Motion to Remand at 32.  The PERA argues that the Second Notice of Removal is not objectively reasonable, because the facts have not changed.  See Second Motion to Remand at 33.  It contends that, following remand, the Defendants took only one deposition, that the documents it provided to the Defendants were publicly available, and that the Second Notice of Removal does not cite any of the documents that the PERA gave to the Defendants as discovery.  See Second Motion to Remand at 33.  It asserts that the facts

remain the same as when the Defendants filed the First Notice of Removal and that, as a result, the Defendants had no objectively reasonable basis to remove the case a second time.  See Second Motion to Remand at 34.  The PERA further asserts that the Defendants' conduct is "an abusive delay tactic the Court should seek to deter."  Second Motion to Remand at 34.  It argues that "Wachovia had access to all material information regarding PERA's status as an arm of the State when it first removed the case to federal court" and that the Defendants "should have presented [their] argument in favor of diversity jurisdiction at that time."  Second Motion to Remand at 34.

On December 1, 2011, the Defendants filed their Response in Opposition to Plaintiff's Motion to Remand and for the Payment of Costs and Expenses.  See Doc. 11 ("Response").  The Defendants assert that the Second Motion to Remand "spends twenty-seven pages conflating the facts, mischaracterizing the holdings of underlying cases, and introducing previously undisclosed evidence."  Response at 3.  They argue that the PERA is not an arm of the state and that the Court has jurisdiction over this action.  See Response at 3.  They contend that, because the PERA is a citizen of New Mexico, the Court has diversity jurisdiction and removal is proper.  See Response at 6.  The Defendants assert that, "[i]n its zeal to avoid federal jurisdiction, PERA mischaracterizes the state of the case law, claiming that there has been 'a nearly unanimous' determination that state retirement systems are 'arms' of the state that created them."  Response at 6-7.  The Defendants further assert that, applying the Tenth Circuit's five-factor test to the facts developed through discovery, the PERA "more closely resembles those systems that have been found not to be arms of the state."  Response at 8 (emphasis in original).

The Defendants argue that the most important factor in determining whether an entity is an arm of the state is whether the State would have to satisfy a judgment entered against the entity and that, "[w]hen the answer is 'No' -- both legally and practically -- the Eleventh Amendment's core

-15-

concern is not implicated."  Response at 8 (citing <u>Hess v. Port Auth. Trans-Hudson Corp.</u>, 513 U.S. 30, 51 (1994)).  They contend that the undisputed facts show that the PERA -- not the State of New Mexico -- would have to pay any judgment entered against the PERA and that the PERA would be the sole beneficiary of any judgment in its favor.  <u>See</u> Response at 9.  The Defendants assert that: (i) Susan Pittard, the PERA's General Counsel, testified in her deposition that the PERA is completely self-funded and that it has never received any general appropriations from the State; (ii) Ms. Pittard acknowledged that the PERA Act contains no provisions requiring the State to either satisfy any judgment against the PERA or to cover any shortfall that the PERA may experience in funding; (iii) Ms. Pittard admitted that the only indemnification provision contained in the PERA Act indemnifies the PERA's Board members out of the PERA's funds; (iv) Ms. Pittard testified that the PERA purchased insurance from the Risk Management Division to offset the cost of any judgment; and (v) Ms. Pittard admitted that any judgment entered in this action would be payable to and benefit the PERA.  <u>See</u> Response at 9-10 (citing Pittard Depo. at 27:1-28:25; <u>id.</u> at 33:1-40:25; Public Employees Retirement Association of New Mexico Financial Statements (dated June 30, 2010), filed October 18, 2011 (Doc. 1-26)("June 30, 2010 Financial Statements"); N.M.S.A. 1978, §§ 10-11-123 to -129.1, 10-11-132).  The Defendants argue that, given the PERA's independence, the PERA Act's silence on this issue is "of no moment."  Response at 10.  They assert that the PERA Act states that any judgment entered against the PERA's Board shall be paid out of the PERA's funds.  <u>See</u> Response at 10.  They contend that the PERA's argues that the State is in complete control of it is "wholly at odds with the Retirement Act, the New Mexico Constitution, and Ms. Pittard's testimony."  Response at 11 (citing N.M. Const. art. 20, § 22; N.M.S.A. 1978, § 10-11-130(A)).  They argue that Ms. Pittard admitted that the PERA Board has "total control over the investment of the trust fund."  Response at 12 (citing Pittard Depo. at 46:22-23).  The Defendants

-16-

assert that the PERA's argument that the State indirectly contributes to the payment of a judgment and its reliance on McGinty v. New York is misplaced, because the Tenth Circuit has rejected the standard that the Second Circuit applied in McGinty v. New York. See Response at 12 & n.6 (citing Duke v. Grady Mun. Schs., 127 F.3d at 981). They further assert that the PERA acknowledges that any judgment against it would not impact the State Treasury. See Response at 12.

The Defendants argue that the PERA acknowledges that neither the PERA Act nor any other statute defines the PERA as an arm of the state, but that the PERA attempts to "read into" the PERA Act such a status. Response at 13. They assert that, "when read as the comprehensive piece of legislation that it was intended to be, it becomes clear that the Legislature intended PERA to function as an entity separate and independent from the State." Response at 13. They contend that, through the PERA Act, the PERA has "all powers necessary or convenient to carry out and effectuate the purposes and provisions of the state retirement acts." Response at 13 (citing N.M. Const. art. 20, §20; N.M.S.A. 1978, § 10-11-130(A)). The Defendants argue that courts have found the following powers as indicative of sufficient independence that an entity was not an arm of the state: (i) to hire counsel; (ii) to sue and be sued; (iii) to issue subpoenas; (iv) to make and execute contracts; (v) to acquire property; (vi) to adopt rules, policies, and procedures; (vii) and to formulate an investment policy. See Response at 14. They assert that the PERA "does not dispute that it enjoys substantial and independent powers," but that the PERA "argues that certain recommendations on how it conducts itself and the limited oversight contemplated by the Retirement Act 'forge a permanent bond' between it and the State." Response at 14. They contend that the "PERA overstates each of these provisions," because many of the provisions cited use the word "may." Response at 14. They argue that, in Lucero v. New Mexico Lottery, Judge Herrera found that required annual and quarterly reports are "insufficient to override the numerous indicia

-17-

of financial and managerial autonomy." 2008 WL 7467977, at *3-4.  The Defendants further assert

that the PERA's reliance on other courts' use of the descriptive term "state agency" is misplaced,

because no court "has addressed the question of whether PERA is an 'arm' of the State."  Response

at 16.  They contend that the PERA acknowledges in its Second Motion to Remand that, under state

law, it is an "adjunct agency," which retains policymaking and administrative autonomy, and that

such state-created entities have been found not to be arms of the state.  Response at 17 (Second

Motion to Remand at 16 & n.7; N.M.S.A. 1978, § 9-1-6).

        The Defendants argue that the PERA enjoys autonomy in managing its day-to-day activities.

See Response at 17.  They assert that the PERA Board is structured to ensure independence, because

ten of the twelve members are elected from the PERA's membership.  See Response at 17.  They

contend that the PERA's independence distinguishes it from other entities which have been found

to be arms of the state, including the SIC and the ERB.  See Response at 18.  They argue that "at

least a majority of the SIC and ERB board members are either high-ranking State officials or

individuals appointed by the governor."  Response at 18 (citing Ernst v. Rising, 427 F.3d at 359-60;

N.M. ex rel. Nat'l Educ. Ass'n of N.M. v. Austin Capital Mgmt., Ltd., 671 F.Supp.2d at 1252-53).

The Defendants contend that, although the PERA Act directs the PERA to hold four meetings each

year, the PERA Board has unilaterally decided to meet monthly, that it has "total control" over the

investment of funds, and that the State's oversight is insufficient to override the numerous indicia

of autonomy.  Response at 19 (citing N.M. Const. art. 20, § 22; N.M.S.A. 1978, § 10-11-133(E);

Lucero v. N.M. Lottery, 2008 WL 7467977, at *3-4; Pittard Depo. at 46:1-25, id. at 56:1-57:25).

        The Defendants assert that the PERA is completely self-funded and does not receive general

appropriations from the State.  See Response at 20.  They argue that, although the State makes

employer contributions under the PERA Act, the cases to which the PERA cites are readily

distinguishable.  See Response at 20.  They contend that, in McGinty v. New York, the Second

Circuit "was focused on the fact that expenses incurred by the retirement system are covered both

by moneys contributed to the 'pension accumulation fund' and appropriated in the state executive

budget."  Response at 20 (citing McGinty v. New York, 251 F.3d at 97).  They assert that, in

California Public Employees Retirement System v. Moody's Corp., the United States District Court

for the Northern District of California was primarily concerned that "the State of California was

statutorily and judicially obligated to pay for any shortfall in the retirement systems funding."

Response at 21 (citing Cal. Pub. Emps. Ret. Sys. v. Moody's Corp., 2009 WL 3809816, at *3-4).

The Defendants further assert that the fact that the PERA does not have the ability to issue bonds

or levy taxes is irrelevant, because it is completely self-funded.  See Response at 22.  They argue

that, "[b]ecause PERA is completely self-funded and self-sufficient, the fact that it does not have

the ability to issue bonds or levy taxes is a neutral consideration."  Response at 22 (citing Lucero

v. N.M. Lottery, No. 07-499, 2008 WL 7467977, at *4).

The Defendants also contend that, should the Court grant the Second Motion to Remand, an

award of attorney's fees and costs is not warranted, because the Defendants had an objectively

reasonable basis for removal.  See Response at 23.  The Defendants assert that the primary evidence

they use to support removal is Ms. Pittard's deposition, which was not taken until October 5, 2011 --

after Judge Conway remanded the case to state court.  See Response at 23.  Additionally, they argue

that, while the PERA asserts that the Defendants had access to the documents it obtained as part of

its jurisdictional discovery, they had to file a motion to compel to obtain those documents.  See

Response at 24 (citing Pub. Emps. Ret. Ass'n of N.M. v. Clearlend Sec., No. D 101-CV-201003651,

Order Granting Defendants' Expedited Motion to Compel Production of Documents (dated Sept.

22, 2011), filed October 18, 2011 (Doc. 1-19)("Order to Compel")).  They argue that, "the fact that

some of those documents were publicly available, does not mean that Defendant 'have access' to them."  Response at 24 (citing Order to Compel at 1).  The Defendants also note that Judge Conway found that the "Plaintiff does not state in its Complaint or pleading that it actually is an arm of the state," and that they followed Judge Conway's directive to avail themselves of discovery in state court.  Response at 24 (citing Conway MOO at 12).  They contend that the PERA's argument that the Defendants already had access to this evidence when they first removed the case "is without merit" and that the Court should not award fees if it remands the case.  Response at 25-26.

On December 15, 2011, the PERA filed its Reply to Defendants' Response in Opposition to Plaintiff's Motion to Remand the Case to State Court and for the Payment of Costs and Expenses.  See Doc. 13 ("Reply").  The PERA emphasizes that the Defendants "face a heavy burden of showing that removal is justified."  Response at 5.  It asserts that "Wachovia has imprudently removed this case on the basis of PERA's status as an arm of the state without fully developing a set of jurisdictional facts from which this Court could determine whether it has subject matter jurisdiction."  Reply at 5.  It contends that the Defendants have not met their burden of showing that the PERA is not an arm of the state.  See Reply at 6.  The PERA argues that the Defendants do not allege any facts showing that either the PERA or the State is liable for judgments against the PERA. See Reply at 6.  It asserts that the Defendants allege that the PERA is self-funded, that the PERA Act indemnifies the Board, that the PERA participates in the Risk Management Division's insurance program, and that none of these facts, taken individually or together, demonstrate "who is ultimately legally liable for a judgment against PERA."  Reply at 6 (emphasis in original).  It contends that this factor requires a determination whether the State is at risk of paying any judgment and that the facts alleged do not shed light on this question.  See Reply at 6 (citing Duke v. Grady Mun. Schs., 127 F.3d at 980).  The PERA argues that, in "apparent acknowledgment of its lack of support for its

assertion, Wachovia asserts 'there is no evidence indicating that the State of New Mexico would be legally liable for any judgment entered against PERA."  Reply at 7 (citing Response at 8).

The PERA also asserts that the Defendants fail to allege any facts regarding the PERA's characterization under state law.  See Reply at 7.  It argues that,

> rather than cite to any New Mexico statutes or case law that give the Court guidance as to how state law defines PERA, Wachovia regurgitates the powers granted to PERA's Board by the Act, and disputes the relevance of the consistent treatment of PERA as a state agency by state statutes and state courts.

Reply at 7-8.  It contends that these corporate powers are only available to the extent that they are "necessary or convenient to carry out and effectuate the purposes" of the PERA Act, and that they "are in no way dispositive as to whether an entity is an arm of the state."  Reply at 8.  The PERA argues that the Defendants' showing of the PERA's autonomy is insufficient.  See Reply at 9.  It asserts that many of the PERA's powers are "limited to the extent that they allow PERA to effectuate its purpose of serving New Mexico's retirees" and that "the ability to sue and be sued, own property, make and execute contracts, and adopt rules are not dispositive for arm of the state purposes."  Reply at 9 (citing Pub. Sch. Ret. Sys. of Mo. v. State St. Bank & Trust Co., 640 F.3d at 828; N.M.S.A. 1978, § 10-11-130(A)).  It further asserts that the Defendants exaggerate "the effect of the state's minority representation on the PERA Board."  Reply at 9 (citing Pub. Sch. Ret. Sys. of Mo. v. State St. Bank & Trust Co., 640 F.3d at 828-29).  It contends that the funding that the PERA receives from the State is significant, because similar contribution schemes have been found to favor arm-of-the-state status.  See Reply at 10 (citing McGinty v. New York, 251 F.3d at 97).  The PERA argues that, in McGinty v. New York, the Second Circuit found that the retirement system's contribution schedule, which included annual state appropriations as an employer, and the way employer contributions were organized, with distinct funds for state-wide purposes, supported

arm-of-the-state status.  See Reply at 10.  It asserts that, in Cal. Pub. Emps. Ret. Sys. v. Moody's Corp., the Northern District of California was concerned with the fact that the retirement system is "a trust fund within the state treasury and is managed by various state actors."  Reply at 11 (citing Cal. Pub. Emps. Ret. Sys. v. Moody's Corp., 2009 WL 3809816, at *4).  Finally, the PERA contends that its inability to issue bonds or levy taxes strongly supports a finding that it is an arm of the state. See Reply at 11.  It argues that the Defendants cite no authority for their argument that "the final factor of the Tenth Circuit arm of the state test should be abrogated when dealing with entities that are self-sufficient."  Reply at 11.

With respect to the cases to which the Defendants cite, the PERA asserts that such authority is unpersuasive.  See Reply at 12.  It argues that several of the cases cited are "well over two decades old, and applied different, less stringent tests than that of the Tenth Circuit; three are unreported and have virtually no precedential or persuasive value; five arise from motions to dismiss . . . , and; [sic] all seven have readily distinguishable facts."  Reply at 13.

With respect to its request for fees, the PERA asserts that the Defendants did not have an objectively reasonable basis for removal and that they are intentionally delaying this litigation.  See Reply at 15.  It argues that the Conway MOO was "not an invitation to continue to delay the action if nothing was gleaned from discovery" and that Judge Conway warned the Defendants "not to take advantage of this invitation by using it as an opportunity to further delay the case."  Reply at 16. It contends that the Defendants have failed to set forth any new facts that has changed the arm-of-the-state analysis.  See Reply at 16.  The PERA argues that, although the Defendants make much of Pittard's deposition, they do not cite anything in her testimony that could not have been learned from the documents available to them and to the public at the time of the first removal.  See Reply at 16.  It contends that this failure to investigate "is exactly the kind of inconsiderate behavior that

-22-

Congress sought to deter by the enactment of Section 1447(c)."  Reply at 16 (citing Martin v. Franklin Capital Corp., 546 U.S. at 140).

     **3.**      **The April 4, 2012 Hearing.**

On April 4, 2012, the Court held a hearing.  The PERA noted that the Court has held, in Hill v. Vanderbilt Capital Advisors, LLC, No. 10-0133, No. 2011 WL 6013025 (D.N.M. Sept. 30, 2011)(Browning, J.), that nearly every court to consider the question has found state pension boards and administrations to be arms of the state.  See Transcript of Hearing at 6:14-21 (April 4, 2012)(Katz)("Tr.").[2]  The PERA asserted that, in Hill v. Vanderbilt Capital Advisors, LLC, the Court cited favorably to New Mexico ex rel. National Education Association of New Mexico v. Austin Capital Management, Ltd., in which the Honorable Bruce Black, Chief United States District Judge, found that the ERB and SIC are arms of the state.  See Tr. at 6:21-25 (Katz).  It also pointed to a recent case, New Mexico Education Retirement Board v. Renaissance Private Equity Partners, L.P., No. CIV. 12-0067, Memorandum Opinion and Order, filed March 26, 2012 (Doc. 27)("Brack MOO"), in which the Honorable Robert Brack, United States District Judge,  held that the ERB was an arm of the state and that  New Mexico ex rel. National Education Association of New Mexico v. Austin Capital Management, Ltd. was correctly decided.  See Tr. at 7:1-6 (Katz).  The Court asked whether Judge Brack characterized the arm-of-the-state analysis in New Mexico ex rel. National Education Association of New Mexico v. Austin Capital Management, Ltd. as an alternative holding.  See Tr. at 7:7-8 (Court).  The PERA responded that Judge Brack characterized it as an alternative holding, but found that the arm-of-the-state analysis was not dicta.  See Tr. at 7:9-10 (Katz).  The Court then asked whether the PERA's attorney, Rebecca M. Katz, and her firm,

---

     [2] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Bernstein Liebhard, LLP, had received a commission from the Attorney General of New Mexico. See Tr. at 7:16-24 (Court).  The PERA responded that Ms. Katz is a special assistant to the Attorney General and that her firm has a contract with the Attorney General's Office.  See Tr. at 7:25-8:23 (Court, Katz).  It emphasized that the burden of proof rests on the Defendants to prove jurisdictional facts by a preponderance of the evidence and that there is a strong presumption against removal. See Tr. at 9:1-8 (Katz).  It argued that, because courts in this District have unanimously found that the ERB and SIC are arms of the state, and because the only difference between those entities and the PERA are the number of state members on the Board, the Court should find that the PERA is an arm of the state.  See Tr. at 9:9-15 (Katz).  It contended that the presence of the Secretary of State and State Treasurer on the Board are sufficient to restrict the PERA's political independence.  See Tr. at 9:16-22 (Katz).

The Court then asked whether the PERA was truly independent, because, although the Attorney General's Office represents it, the PERA also has its own counsel, hires its own actuarials, and develops its own policies.  See Tr. at 10:6-11:2 (Court, Katz).  The PERA asserted that the same could be said for the ERB, which also has its own general counsel and a strong board.  See Tr. at 11:3-7 (Katz).  It argued that the PERA Act does not give the PERA any greater control or independence than the ERB.  See Tr. at 11:8-11 (Katz).  The Court then asked whether the Tenth Circuit test was formalistic and whether that was why Judge Conway remanded for jurisdictional discovery.  See Tr. at 11:12-17 (Court).  The PERA responded that it believes Judge Conway ordered discovery, because the Defendants based their First Notice of Removal on one sentence in the Complaint and included no jurisdictional facts.  See Tr. at 11:18-23 (Katz).  It pointed out that the Defendants asked Judge Conway to conduct jurisdictional discovery in federal court, and he denied that request when he remanded the case to state court.  See Tr. at 11:23-25 (Katz).  The Court

then asked what the purpose of jurisdictional discovery was.  See Tr. at 12:16-19 (Court).  The

PERA asserted that the Defendants received, in state discovery, statutes and documents already

available to the public and on its website.  See Tr. at 12:20-23 (Katz).  It represented that it also gave

the Defendants a few other internal reports, but stated that Tenth Circuit law establishes that a

defendant is entitled to jurisdictional discovery.  See Tr. at 12:23-25 (Katz).  The PERA also

admitted that the Complaint contained minimal allegations regarding jurisdiction.  See Tr. at 13:2-3

(Katz).

       With respect to the Tenth Circuit's factors, the PERA asserted that the PERA Act is silent

regarding the PERA's liability for a judgment, unlike the New Mexico Lottery Authority and the

NMMCC, where the New Mexico Legislature specified that those entities would be liable for

judgments.  See Tr. at 13:11-25 (Katz).  The PERA argued that, if the New Mexico Legislature

wanted to ensure that the State would not be liable, it would have used the same specific language

that it did in those other statutes.  See Tr. at 14:1-5 (Katz).  It contended that, unlike those entities,

the State makes significant contributions to the PERA and that state money would be used to cover

any shortfall in the pension fund.  See Tr. at 14:6-10 (Katz).  The Court then asked whether any

judgment had been entered against the PERA that it could not cover out of its own funds and how

the PERA's relationship with the Risk Management Division works.  See Tr. at 14:13-25 (Court,

Katz).  The PERA agreed that it pays a certain amount of its assets to the Risk Management Division

for the ability to participate in the insurance program.  See Tr. at 15:1-9 (Court, Pound, Katz).  The

Court then asked whether the PERA gets legislative appropriations for per diem and employee costs.

See Tr. at 15:10-13 (Court).  Ms. Pittard responded that the PERA is self-funded, so most costs

come from trust-fund assets, but asserted that the PERA is required to get those monies approved

through the budget process with the State.  See Tr. at 15:14-17 (Pittard).  She then clarified that,

although the PERA does not get general funding from the State, it has to go through the budget process to have trust funds appropriated for the administration of the fund.  See Tr. at 16:16-19 (Pittard).  She agreed that the New Mexico Legislature must authorize the PERA to spend any funds from the pension and that the PERA cannot spend more than is authorized.  See Tr. at 17:1-5 (Court, Pittard).  Ms. Pittard argued that this process ensured complete oversight through the Department of Finance and Administration, and from the New Mexico Legislature.  See Tr. at 17:6-11 (Court, Pittard).  The Court asked whether Ms. Pittard appeared before the New Mexico Legislature and regarding what issues.  See Tr. at 17:15-19 (Court, Pittard).  She responded that she does appear before the New Mexico Legislature, and that she appears before it regarding legislative changes that the New Mexico Legislature might make to the PERA Act, that she testifies on behalf of PERA members, and that she goes through the budgetary process each year -- where she testifies before the Legislative Finance Committee and advocates for the PERA's budget.  See Tr. at 17:20-18:4 (Pittard).  She also stated that, if there is a budget shortfall, she must go back through the budget authorization process to have additional monies approved.  See Tr. at 18:9-13 (Pittard).

    The Court then asked whether the New Mexico Legislature has control over how many attorney's work in the General Counsel's Office.  See Tr. at 18:24-19:2 (Court).  Ms. Pittard stated that it does.  See Tr. at 19:3 (Pittard).  The Court inquired about the division of work between the PERA's general counsel and the Attorney General's Office.  See Tr. at 19:4-6 (Court).  Ms. Pittard represented that, as general counsel, she has to receive a special commission from the Attorney General's office to execute any contracts over $200,000.00 and that all contracts, other than investment contracts, are required to go to the Department of Finance and Administration for approval.  See Tr. at 19:7-20 (Court, Pittard).  The Court asked whether, in recent history, the PERA had been involved in any litigation with the Attorney General's Office, and Ms. Pittard responded

that it has not.  See Tr. at 20:3-21 (Court, Pittard).

The PERA contended that the New Mexico Legislature has not defined the PERA as a completely separate entity under state law, as it did with the New Mexico Lottery Association and the NMMCC.  See Tr. at 20:24-21:3 (Katz).  It argued that the PERA Act has numerous provisions demonstrating an intent to treat the PERA as an arm of the state, because the state controls how the funds are managed, invested, and distributed.  See Tr. at 21:11-14 (Katz).  It noted that the State makes large contributions to the fund and that, under the Executive Reorganization Act, N.M.S.A. 1978, §§ 9-1-1 to -13, the PERA, like the ERB and SIC, is considered an agency of the executive branch.  See Tr. at 21:15-17 (Katz).  The PERA emphasized that its powers under the PERA Act are only those necessary and convenient to carry out the PERA's purposes, and argued that the Defendants have not met their burden to show that this factor weighs against finding that the PERA is an arm of the state.  See Tr. at 21:18-22 (Katz).  With respect to the State's guidance and control, the PERA contended that the PERA Act gives the State substantial control over it, because it: (i) establishes when the Board meets; (ii) requires quarterly financial reports; (iii) requires a yearly written investment policy; (iv) encourages the Board to consult with the SIC; and (iv) grants the PERA no power to draw or disburse funds on its own.  See Tr. at 21:23-22:13 (Katz).  It asserted that the Defendants exaggerated the effect of majority representation on the Board and related that the fact that there are State officials on the PERA's Board is what is important.  See Tr. at 22:14-18 (Katz).  Moving on to the degree-of-state-funding factor, the PERA argued that the State is the biggest public employer and makes up a substantial portion of the PERA's funding.  See Tr. at 22:19-24 (Katz).  The PERA further asserted that it does not have the power to issue bonds or levy taxes, which it contended tops the balance in favor of finding arm-of-the-state status.  See Tr. at 23:5-7 (Katz).

-27-

On the matter of costs and attorney's fees, the PERA asserted that the Second Notice of Removal was unreasonable and that there is no need to show bad faith to recover fees.  See Tr. at 23:8-12 (Katz).  It argued that the Defendants had access to the same information at the time of the First Notice of Removal as at the time of the Second Notice of Removal, because almost all of the information that the Defendants sought during discovery were public records.  See Tr. at 23:13-16 (Katz).  It contended that the Second Notice of Removal was a delay tactic, which has delayed progress of the case for approximately a year and a half.  See Tr. at 23:16-23 (Katz).  The Court asked whether there was a split of authority regarding the arm-of-the-state status of state pension plans.  See Tr. at 24:1-8 (Court).  The PERA responded that any authority going the other way are factually distinguishable from this case.  See Tr. at 24:9-13 (Katz).  The Court stated that no state pension plan was likely to mirror another, but asked whether the authorities to which the Defendants cite established an objectively reasonable basis to remove.  See Tr. at 24:14-20 (Court).  The PERA asserted that there was no objectively reasonable basis to remove, because Judge Conway noted that nearly every court has held that a state pension plan is an arm of the state and the Defendants ignored his warnings.  See Tr. at 24:21-25 (Katz).  The PERA noted that in Eastwood Enterprises v. Farha, Nos. 8:07-cv-1940-T-24 MSS, 8:07-cv-1993-T-24 TBM, 2008 WL 687351 (M.D. Fla. Mar. 11, 2008), the United States District Court for the Middle District of Florida also noted that the SIC and the PERA are closely related, because they share overlapping management and representation.  See Tr. at 25:11-22 (Court, Katz).

The Defendants began their argument with whether it was objectively reasonable to remove a second time and asserted that nothing in Judge Conway's opinion prohibited such an action.  See Tr. at 26:18-23 (deVyver).  They argued that Judge Conway sent the case back to state court so that they could conduct jurisdictional discovery and that they conducted such discovery.  See Tr. at

-28-

26:18-27:2 (deVyver).  They agreed that the primary discovery they received was a deposition of

Ms. Pittard and 200 pages of documents.  See Tr. at 27:3-10 (Court, deVyver).  The Court then

asked what about Ms. Pittard's deposition changed the analysis.  See Tr. at 27:11-12 (Court).  The

Defendants represented that Ms. Pittard testified that insurance would cover any judgment against

the PERA and that the PERA used its funds to pay premiums for that insurance.  See Tr. at 27:13-19

(deVyver).  They asserted that, in Duke v. Grady Municipal Schools, the Tenth Circuit held, based

in large part on the fact that the school had an insurance policy that would cover any judgment, that

the school was not an arm of the state.  See Tr. at 27:20-25 (deVyver).  The Defendants asserted that

the most important fact in this analysis is who would pay a judgment and that the PERA has

insurance which will cover any such liability.  See Tr. at 28:13-19 (deVyver).  They admitted,

however, that this factor is only one part of a balancing test.  See Tr. at 29:8-14 (deVyver).  The

Court then asked whether the fact that the PERA is the one to write the check, after obtaining

legislative approval, and performs the "bookkeeping function" move it away from arm-of-the-state

status.  Tr. at 30:5-14 (Court).  The Defendants emphasized that the PERA spends its funds and does

not receive appropriations from the State.  See Tr. at 30:15-23 (Court, deVyver).  The Court asked

whether the Defendants agreed with Ms. Pittard's description -- if the PERA does not get approval

from the New Mexico Legislature and Department of Finance and Administration, it cannot spend

its own funds.  See Tr. at 30:24-31:1 (Court).  The Defendants agreed and asserted that the PERA's

ability to spend its funds related to the third factor of the Tenth Circuit's test -- autonomy versus

state control.  See Tr. at 31:2-5 (deVyver).  With respect to the Board's composition, the Defendants

argued that a key fact is that only two of the twelve Board members are state officials, and they

contended that this factor is a key difference between the ERB, which is a state-controlled board,

and the PERA.  See Tr. at 31:10-32:12 (Court, deVyver).

The Defendants argued that all the cases are different, because the Tenth Circuit employs a five-factor test, but asserted that the test derives from one principle -- whether there is state control or autonomy.  See Tr. at 34:1-20 (deVyver).  They contended that part of that analysis is whether the entity receives state funding.  See Tr. at 34:21-24 (deVyver).  They argued that the PERA does not receive appropriations from the State and that it is self-funded through investment income.  See Tr. at 35:1-5 (deVyver).  The Court asked whether that self-funding model was an accurate description, because the State makes certain contributions to the fund.  See Tr. at 35:6-9 (Court). The Defendants responded that the State makes contributions, but argued that how and why the State makes such contributions is important.  See Tr. at 35:10-14 (deVyver).  They asserted that the PERA is no different than a municipality which receives some state funding and that the State is not going to be a backstop for the PERA if it runs out of money.  See Tr. at 35:17-23 (deVyver).  They contended that, if there is a judgment in the PERA's favor, the money would go to the PERA and that, in New Mexico ex rel. National Education Association of New Mexico v. Austin Capital Management, Ltd., Judge Black found that the money from a judgment would go to the State. See Tr. at 36:1-7 (deVyver).  They argued that the PERA wanted the Court to make a large leap and find that, because the New Mexico Legislature did not specify who would be responsible for a judgment, the State is responsible.  See Tr. at 37:1-7 (deVyver).  They asserted that the PERA's argument does not make sense, because the New Mexico Legislature could have spoken on that issue, but chose not to say anything, and the Court should not guess what it intended.  See Tr. at 37:7-10 (deVyver).  The Court then stated that it would seem that most of the litigation in which the PERA is involved is not "bet the trust fund litigation" and asked whether both sides are, to a certain extent, guessing whether the New Mexico Legislature would intervene if there was a "bet the trust" judgment.  Tr. at 37:11-38:1 (Court).  The Defendants responded that, under Duke v. Grady Mun.

Schs., the Court should not speculate about what may happen if there is a judgment and that, in that case, like the PERA, the state entity had insurance, which ended the analysis. See Tr. at 38:2-14 (deVyver). They argued that the characterization-under-state-law factor is a neutral factor, because there is nothing in the New Mexico Constitution or statutory framework that gives any guidance whether the PERA is an arm of the state. See Tr. at 39:6-17 (deVyver). They further asserted that the PERA has all the powers necessary to carry out the PERA Act and, although some of its powers are subject to state approval, it is not state-controlled. See Tr. at 40:15-24 (deVyver). They emphasized that the PERA is self-funded. See Tr. at 41:6-19 (deVyver). Finally, the Defendants admitted that the PERA cannot issue bonds or levy taxes, but contended that this factor was not determinative. See Tr. at 41:20-42:1 (deVyver). The Defendants argued that the PERA is self-sufficient, and is not an alter ego or arm of the state. See Tr. at 42:2-5 (deVyver).

The Court stated that it appears the PERA is self-funded to a some degree, but that its funding is out of its control and that the New Mexico Legislature decides how much it contributes. See Tr. at 42:6-12 (Court). The Defendants responded that all participating employees and employers pay into the fund, but admitted that the New Mexico Legislature decides how much it pays. See Tr. at 42:13-19 (Court, deVyver). The Court asked whether it hurt the Defendants' argument that the PERA Board has no control over how much the State decides it should contribute. See Tr. at 42:20-22 (Court). The Defendants asserted that it is a factor that weighs against them, and goes to the control and autonomy part of the analysis. See Tr. at 42:23-25 (deVyver). They argued that the State contributions, however, should not make a difference, because the State is acting no different than any other employer. See Tr. at 43:1-5 (deVyver).

The PERA responded that the PERA has the same funding process as the ERB, which has been found to be an arm of the state several times. See Tr. at 46:1-6 (Katz). It asserted that it cannot

-31-

set contribution rates or benefit levels, and that such authority rests solely with the New Mexico Legislature.  See Tr. at 46:7-10 (Katz).  It argued that the Board manages only the fund's investments.  See Tr. at 46:10-13 (Katz).  In response to the Court's questions, Ms. Pittard confirmed that Board members are subject to the Per Diem and Mileage Act, N.M.S.A. 1978, § 22-11-5(D), and that the PERA is subject to the Procurement Code, N.M.S.A. 1978, §§ 13-1-28 to -199 -- except with respect to investment-related services.  See Tr. at 47:1-23 (Court, Pittard).  The Court then asked if the PERA differed from other agencies in any significant way.  See Tr. at 47:24-48:3 (Court).  Ms. Pittard responded that the only exception of which she could think was that the Board, rather than the Governor, appoints the PERA's Executive Director.  See Tr. at 48:4-15 (Court, Pittard).

## LAW REGARDING ELEVENTH AMENDMENT AND DIVERSITY JURISDICTION

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.  The courts have sometimes referred to the states' immunity from suit as "Eleventh Amendment immunity."

> The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.  Rather, as the Constitution's structure, its history, and the authoritative interpretations by [the Supreme] Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today.

Alden v. Maine, 527 U.S. 706, 713 (1999).  Thus, while the Eleventh Amendment's explicit terms do not include citizens' suits against their own state, "the [Supreme] Court has upheld States' assertions of sovereign immunity in various contexts falling outside the literal text of the Eleventh

-32-

Amendment." <u>Alden v. Maine</u>, 527 U.S. at 727 (citing <u>Hans v. Louisiana</u>, 134 U.S. 1 (1890)), which held that sovereign immunity barred a citizen from suing his own state under federal-question jurisdiction).  The federal courts have broadly construed the Eleventh Amendment to render states immune from suits that private parties bring in federal court.  See <u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 54 (1996).

"A suit generally may not be maintained directly against the State itself, or against an agency or department of the State, unless the State has waived its sovereign immunity." <u>Fla. Dep't of State v. Treasure Salvors, Inc.</u>, 458 U.S. 670, 684 (1982).  See <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974)(noting that state officials are immune under the Eleventh Amendment when they are sued in their official capacities).  Thus, the Eleventh Amendment "largely shields States from suit in federal court without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." <u>Duke v. Grady Mun. Schs.</u>, 127 F.3d at 974 (quoting <u>Hess v. Port Auth. Trans-Hudson Corp.</u>, 513 U.S. at 39)(internal quotation marks omitted). "Eleventh Amendment immunity, however, extends only to the states and governmental entities that are arms of the state." <u>Duke v. Grady Municipal Schs.</u>, 127 F.3d at 974 (citations omitted)(internal quotation marks omitted).

To remove a case based on diversity, the diverse defendant must demonstrate that all the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied.  See <u>Bio-Tec Envtl., LLC v. Adams</u>, 792 F.Supp.2d 1208, 1213 (D.N.M. 2011)(Browning, J.).  Section 1332 provides that federal courts have original jurisdiction where the matter in controversy exceeds $75,000.00 and is between citizens of different states.  See 28 U.S.C. § 1332.  "It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals." <u>Pritchett v. Office</u>

Depot, Inc., 404 Fl3d 1232, 1235 (10th Cir. 2005)(citing Shamrock Oil & Gas Corp. v. Sheets, 313

U.S. 100, 108-09 (1941); United States ex rel. King v. Hillcrest Health Ctr., 264 F.3d 1271, 1280

(10th Cir. 2001)).  "All doubts are to be resolved against removal."  Fajen v. Found. Reserve Ins.

Co., 683 F.2d 331, 333 (10th Cir. 1982).  "The burden of establishing subject-matter jurisdiction is

on the party asserting jurisdiction."  Montoya v. Chao, 296 F.3d 952, 955 (10th Cir. 2002).  A state

is not a "citizen" for the purposes of diversity jurisdiction.  Moor v. Alameda Cnty., 411 U.S. 693,

717 (1973).  A state's political subdivision, unless it is simply "the arm or the alter ego of the state,"

is a citizen of the state for diversity purposes.  Moor v. Alameda Cnty., 411 U.S. at 717 (citing

Bullard v. City of Cisco, 290 U.S. 179 (1933)).

To determine whether an entity is an "arm of the state" for purposes of the Eleventh

Amendment, the Tenth Circuit makes two general inquiries:

> [T]he court first examines the degree of autonomy given to the agency, as
> determined by the characterization of the agency by state law and the extent of
> guidance and control exercised by the state.  Second, the court examines the extent
> of financing the agency receives independent of the state treasury and its ability to
> provide for its own financing.  The governmental entity is immune from suit if the
> money judgment sought is to be satisfied out of the state treasury.

Duke v. Grady Mun. Schs., 127 F.3d at 974 (quoting Watson v. Univ. of Utah Med. Ctr., 75 F.3d

569, 574-75 (10th Cir.1996)) (internal quotations omitted).[3]  "The Supreme Court has indicated .

. . that 'the vulnerability of the State's purse [i]s the most salient factor in Eleventh Amendment

determinations.'"  Duke v. Grady Mun. Schs., 127 F.3d at 974 (quoting Hess v. Port Auth.

---

[3]The Tenth Circuit originally found that New Mexico school districts were arms of the state,
based "on the state's constitutional and statutory provisions."  Martinez v. Bd. of Educ. of Taos
Mun. Sch. Dist., 748 F.2d 1393, 1396 (10th Cir. 1984).  In Duke v. Grady Municipal Schools, the
Tenth Circuit, analyzing New Mexico school districts under its five-factor test, found that "school
districts and their governing boards in New Mexico are not arms of the state, and they are
accordingly not shielded by the Eleventh Amendment from liability."  127 F.3d at 981.

Trans-Hudson Corp., 513 U.S. at 48).  The Tenth Circuit has also described the factors necessary

to determine whether an entity is an arm of the state as: "(1) the characterization of the governmental

unit under state law; (2) the guidance and control exercised by the state over the governmental unit;

(3) the degree of state funding received; and (4) the governmental unit's ability to issue bonds and

levy taxes on its own behalf."  Sturdevant v. Paulsen, 218 F.3d at 1166.

    This District has had several opportunities to consider whether New Mexico entities are arms

of the state.  In 2003, the Court found that the NMMCC was not entitled to Eleventh Amendment

immunity.  See Jornigan v. N.M.  Mut. Cas. Co., 2004 WL 3426120, at *1.  The Court held that the

NMMCC has a high level of autonomy:

> The power to set the policies and procedures for the company is vested in the board.
> The board may perform all acts necessary or appropriate to exercise that power.  The
> board shall have the same power, authority and jurisdiction as that authorized by law
> for the governing body of a private insurance carrier.

Jornigan v. N.M. Mut. Cas. Co., 2004 WL 3426120, at *7 (citing N.M.S.A. 1978, § 52-9-5(H)).  The

Court also noted that the New Mexico Legislature authorized the NMMCC to "conduct all business

and affairs and perform all acts in carrying out its function whether or not specifically designated

[by statute]."  Jornigan v. N.M. Mut. Cas. Co., 2004 WL 3426120, at *8 (citing N.M.S.A. 1978,

§ 52-9-16(G))(alteration original).  The Court held that "[t]his autonomy indicates a level of state

involvement in NMMCC's day-to-day activities that is insufficient to confer Eleventh Amendment

immunity," but could not say that the NMMCC is completely autonomous because of the presence

of state officials on the board.  Jornigan v. N.M. Mut. Cas. Co., 2004 WL 3426120, at *8.  With

respect to the other Tenth Circuit factors, the Court found: (i) that the NMMCC is privately financed

and receives no state funding; and (ii) that the New Mexico Legislature explicitly provided that the

State would not satisfy a judgment against the NMMCC.  See Jornigan v. N.M. Mut. Cas. Co., 2004

WL 3426120, at *8.

In Lucero v. New Mexico Lottery, Judge Herrera found that the New Mexico Lottery Authority was not an arm of the state.  See 2008 WL 7467977, at *1.  Judge Herrera found that, "[i]n constructing the lottery's authorizing statutory scheme as it did, the legislature evinced its intent to insulate the state from any liabilities that the NMLA may incur."  Lucero v. N.M. Lottery, 2008 WL 7467977, at *2.  She also found that the New Mexico Legislature had provided the New Mexico Lottery Authority with "considerable autonomy," because: (i) the enabling legislation provides it with "all powers necessary or convenient to carry out and effectuate the purposes and provisions of the New Mexico Lottery Act"; (ii) the legislation sets out powers reflective of an independent agency; (iii) the state appointees to the board can only be removed for malfeasance, misfeasance, or willful neglect of duty; and (iv) board members are not state employees.  Lucero v. N.M. Lottery, 2008 WL 7467977, at *3.  Judge Herrera recognized that the State maintains some oversight over the New Mexico Lottery Authority, including requiring certain reports and financial disclosures, but held that such oversight was "insufficient to override the numerous indicia of financial and managerial autonomy."  Lucero v. N.M. Lottery, 2008 WL 7467977, at *4.  Judge Herrera held that the fact that "the lottery's net revenues are apportioned to the state's coffers has no impact on the fact that the lottery has full control over the generation of those revenues" and that the New Mexico Legislature authorized the New Mexico Lottery Authority to issue revenue bonds worth up to three million dollars.  See Lucero v. N.M. Lottery, 2008 WL 7467977, at *5.

In New Mexico ex rel. National Education Association of New Mexico v. Austin Capital Management, Ltd., Judge Black analyzed the same question with respect to the ERB and SIC.  Judge Black held that "there is no question that both the SIC and the ERB are arms of the State rather than independent political subdivisions."  N.M. ex rel. Nat'l Educ. Ass'n of N.M. v. Austin Capital

Mgmt., Ltd., 671 F.Supp.2d at 1252.  He noted that all members of the SIC are high-ranking state officials and that the New Mexico Legislature "has by statute established the investment rules under which the SIC is allowed to operate, as well as the interaction that is required between the SIC and the state investment officer."  N.M. ex rel. Nat'l Educ. Ass'n of N.M. v. Austin Capital Mgmt., Ltd., 671 F.Supp.2d at 1252.  Judge Black found that the SIC's investment funds belonged to the State's various permanent funds and that the SIC "in no way functions independently of the State to the degree required by the applicable test."  N.M. ex rel. Nat'l Educ. Ass'n of N.M. v. Austin Capital Mgmt., Ltd., 671 F.Supp.2d at 1252.  With respect to the ERB, Judge Black found that a majority of the ERB consists of state officials, that the State Treasurer is the custodian of the ERB's funds, that fund disbursements go through the Department of Finance and Administration, and that the New Mexico Legislature has legislated how many times per year the ERB must meet, whether a quorum is required, and on the employment of expert advisors.  See N.M. ex rel. Nat'l Educ. Ass'n of N.M. v. Austin Capital Mgmt., Ltd., 671 F.Supp.2d at 1253.  Judge Brack, relying on New Mexico ex rel. National Education Association of New Mexico v. Austin Capital Management, Ltd., has also found that the ERB is an arm of the state.  See Brack MOO at 3.  In Hill v. Vanderbilt Capital Advisors, LLC, the Court, although not deciding whether the ERB was an arm of the state, noted that "state pension boards and administrations have been found to be 'arms of the state' by virtually every court considering that question."  2011 WL 6013025, at *41.

## ANALYSIS

The Court will grant in part and deny in part the Second Motion to Remand.  The Court has the authority to decide the Second Motion to Remand.  Because the Court finds that the PERA is an arm of the state and therefore not subject to diversity jurisdiction, the Court will remand this case to state court.  The Court will not, however, order that the Defendants bear the PERA's costs and

expenses, including attorney's fees, pursuant to 28 U.S.C. § 1447(c), because the Court concludes

that the Defendants had an objectively reasonable basis for seeking removal.

## I. THE COURT HAS THE AUTHORITY TO DECIDE THE SECOND MOTION TO REMAND.

Neither party addresses the Court's jurisdiction to decide the Second Motion to Remand.

Section 1447(d) of Title 28 of the United States Code provides that "[a]n order remanding a case

to the State court from which it was removed is not reviewable on appeal or otherwise." 28 U.S.C.

§ 1447(d).  "This prohibition extends to the court reviewing its own remand orders, as well as to

appellate courts reviewing the orders of district courts." Stark-Romero v. Nat'l R.R. Passenger Co.,

763 F.Supp.2d 1231, 1251 (D.N.M. 2011)(Browning, J.).  In Stark-Romero v. National Railroad

Passenger Co., the Court held that it is "foreclosed from reconsidering its remand determination."

763 F.Supp.2d at 1261 (citing Chaara v. Intel Corp., No. 05-0278, 2006 WL 4060670, at *6 (D.N.M.

Nov. 21, 2006)(Browning, J.)).  Accordingly, before the Court addresses the parties' arguments

regarding the PERA's arm-of-the-state status, the Court must determine whether the Defendants are

asking the Court to reconsider Judge Conway's MOO.

There appear to be two scenarios in which a successive notice of removal is permissible.

First, the Supreme Court has held that "only remands based on grounds specified in § 1447(c) are

immune from review under § 1447(d), i.e., a timely raised defect in removal procedure or lack or

subject-matter jurisdiction, are immune from review under § 1447(d)." Things Remembered, Inc.

v. Petrarca, 516 U.S. 124, 127 (1995).[4]  For example, the Supreme Court has held that a "District

---

[4]Section 1447(c) provides:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).  If at any time before final judgment it appears that

Court's abstention-based remand order does not fall into either category of remand order described in § 1447(c), as it is not <u>based on lack of subject matter jurisdiction</u> or defects in removal procedure." <u>Quackenbush v. Allstate Ins. Co.</u>, 517 U.S. 706, 712 (1996)(emphasis added).  The Supreme Court has also held, in <u>Thermtron Products, Inc. v. Hermansdorfer</u>, 423 U.S. 336 (1976), that "only remand orders under § 1447(c) and invoking the grounds specified therein -- that removal was improvident <u>and</u> without jurisdiction -- are immune from review under § 1447(d)."  423 U.S. at 345-46 (emphasis added).  To determine whether a remand order is based on § 1447(c), courts "independently review[] the record."  <u>Dalrymple v. Grand River Dam Auth.</u>, 145 F.3d 1180, 1185 (10th Cir. 1998).  "An explicit reference to § 1447(c) does not automatically render a remand order nonreviewable," nor does "the absence of such a reference automatically confer . . . jurisdiction over a remand order."  <u>Dalrymple v. Grand River Dam Auth.</u>, 145 F.3d at 1184.

Second, the Tenth Circuit, in <u>O'Bryan v. Chandler</u>, 496 F.2d 403 (10th Cir. 1974), held that "§ 1446(b) allows for more than one petition to remove."  496 F.2d at 408.  The United States Court of Appeals for the Seventh Circuit has held

> A premature removal may lead to a perfectly justified remand; but when matters change -- for example, by a dismissal of a party whose presence spoiled complete diversity of citizenship, or by a disclosure that the stakes exceed the jurisdictional amount -- the case may be removed, provided only that it is less than one year old.

<u>Benson v. SI Handling Sys., Inc.</u>, 188 F.3d 780, 782-83 (7th Cir. 1999).  In that case, the Honorable Frank H. Easterbrook, United States Circuit Judge for the Seventh Circuit, noted that the district

---

the district court lacks subject matter jurisdiction, the case shall be remanded.  An order remanding the case may require payment of just costs and any actual expenses including attorney fees, incurred as a result of the removal.  A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court.  The State court may thereupon proceed with such case.

28 U.S.C. § 1447(c).

court had remanded, because the defendants had failed to establish the amount-in-controversy

requirement.  See Benson v. SI Handling Sys., Inc., 188 F.3d at 782.  The Seventh Circuit held:

> The first remand order, based on the judge's conclusion that federal jurisdiction had
> not been established, was covered by § 1447(d).  But even non-appealable orders are
> law of the case and my be revisited only when intervening events justify that step.
> Such an event occurred: plaintiffs conceded that they seek more than the
> jurisdictional minimum amount.

Benson v. SI Handling Sys., Inc., 188 F.3d at 783.  The Seventh Circuit noted that the "only effect

of adopting an absolute one-bite rule would be to encourage plaintiffs to be coy."  Benson v. SI

Handling Sys., Inc., 188 F.3d at 783.

> The removal statute does not categorically prohibit the filing of a second removal
> petition following remand, and if subsequent pleadings or conduct by the parties, or
> various other circumstances, bring a case that was previously not removable within
> the removal jurisdiction of the federal courts, a second notice of removal is
> permissible.

J. Kennel, C.J.S., Removal of Cases § 181 (2012).  The United States Court of Appeals for the Ninth

Circuit has held that "it is well within the [district] court's discretion to remand to state court rather

than ordering jurisdictional discovery, with the knowledge that later-discovered facts may prompt

a second attempt at removal."  Abrego Abrego v. Dow Chemical Co., 443 F.3d 676, 691 (9th Cir.

2006).  In Williams v. Costco Wholesale Corp., 471 F.3d 975 (9th Cir. 2006), the Ninth Circuit

again addressed a second notice of removal.  There, after the defendants removed the case to federal

court, the plaintiff amended his complaint to eliminate the federal claim, and the district remanded

the case.  See Williams v. Costco Wholesale Corp., 471 F.3d at 976.  The defendants then removed

a second time based on diversity of citizenship.  See Williams v. Costco Wholesale Corp., 471 F.3d

at 976.  The Ninth Circuit held that "[b]ecause this remand was not based on lack of subject matter

jurisdiction or any defect in the removal -- the grounds for which 28 U.S.C. § 1447(d) bars appellate

review -- we may review the remand order."  Williams v. Costco Wholesale Corp., 471 F.3d at 976

n.3.

There is some tension between the Congressional statute and the line of cases that do not allow review of a remand order, and the line of cases that allow second notices of removal and then review those second notices of removal. Both lines have solid bases in Congressional statutes and Supreme Court precedent, so the Court may not interpret one line to swallow the other area of law. The dividing line is somewhat technical, but bright. Here, the particular wording of Judge Conway's MOO puts him into the second category rather than the first line of cases. If he had said that he did not have jurisdiction, the Court would find that § 1447(d) applies and that the Court could not review the remand order. Because he did not, and there was no procedural defect in the First Notice of Removal, the Second Notice of Removal does not fall within the scope of § 1447(d) and the Second Notice of Removal is reviewable.

Judge Conway found that the First Notice of Removal was "itself insufficient to establish federal diversity jurisdiction, because it does not state facts sufficient to support a finding that [the PERA] is a citizen of New Mexico." Conway MOO at 2. He held that the "Notice is deficient on its face because it does not state facts sufficient to establish that PERA is a 'citizen' of New Mexico." Conway MOO at 6. He found that the First Notice of Removal was "premature." Conway MOO at 8. Judge Conway noted that, "although Plaintiff may not have affirmatively failed to disclose facts, Plaintiff does not state in its Complaint or other pleadings that it actually is an arm of the state." Conway MOO at 12 (emphasis in original). Judge Conway instructed the Defendants, like the defendants in Abrego Abrego v. Dow Chemical Company, to "flesh[] out" the jurisdictional facts "through discovery in state court." Conway MOO at 2. Judge Conway did not determine that

the federal courts lacked subject-matter jurisdiction,[5] because he did not determine whether the PERA was an arm of the state, and he did not find that the Defendants had permitted the 30-day limitations period to expire, or that they made some other procedural error.  There was no procedural defect here, because the Defendants filed their First Notice of Removal within 30 days of the Complaint's filing. The Complaint was filed on October 20, 2010, and the First Notice of Removal was filed on November 18, 2010.  Because there is no procedural defect, if Judge Conway relied on any basis within § 1447(c) to support his memorandum opinion and order, it would have to be a lack of subject-matter jurisdiction.

The Court concludes that Judge Conway did not find that the federal courts lack subject-matter jurisdiction; rather, Judge Conway concluded that the Defendants had failed to meet their burden of proof.  Judge Conway found that "the undisputed facts require[] fleshing out through discovery in state court" and that the "Notice itself is insufficient."  Conway MOO at 2.[6]  He did not assess whether the PERA was an arm of the state, such that diversity jurisdiction could not be established.  If Judge Conway had said that he lacked jurisdiction to hear this dispute, then this case would likely fall under § 1447(d) and the Court would be unable to "review" Judge Conway's MOO.

_____

[5]Courts often go further and say that, because the notice of removal is deficient in establishing jurisdiction, the Court lacks jurisdiction.  See Moody v. Great Western Ry. Co., 536 F.3d 1158, 1163 (10th Cir. 2008)("If the district court invokes subject matter jurisdiction as the rationale for remand, and subject-matter jurisdiction was a plausible rationale for that remand, our ability to further review that remand is barred by § 1447(d)."); Hernandez v. Safeco Ins. Co. of Am., No. Civ. 11-0245, Memorandum Opinion and Order at 2, filed September 8, 2011 (Doc. 33) (Parker, J.)("Hence, the Court concludes that this case should be remanded to state court due to lack of federal subject matter jurisdiction.").  If Judge Conway had added that phrase, the Court would not be able to review his remand order.  Judge Conway did not, however, say that he lacks subject-matter jurisdiction, and the Second Notice of Removal is reviewable.

[6]The Court is not opining, in any way, on the appropriateness of Judge Conway's decision to remand for jurisdictional discovery or suggesting that it would employ a similar procedure.

As it stands, however, the Court is not reviewing any part of Judge Conway's decision.  The question before the Court is different from the one before it in Chaara v. Intel Corp., where the Court found that it could not decide the motion to remand with respect to "Chaara I."  410 F.Supp.2d at 1092.  There, the Defendants asked that the Court find that "diversity, in fact existed when Chaara I was filed, even though Judge Black ruled the opposite."  Chaara v. Intel Corp., 410 F.Supp.2d at 1093.  To reach a conclusion in this case, the Court need not assess the correctness of any part of Judge Conway's MOO.  To analyze the Tenth Circuit's five-factor arm-of-the-state test, the Court need not discuss Judge Conway's opinion, because he did not perform such an analysis.  Judge Conway focused on the allegations in the First Notice of Removal.  The Court now has before it a different notice of removal, which is further developed and which addresses the arm-of-the-state question.  As the Supreme Court held in Thermtron Products, Inc. v. Hermansdorfer, "only remand orders under § 1447(c) and invoking the grounds specified therein -- that removal was improvident and without jurisdiction -- are immune from review under § 1447(d)."  423 U.S. at 345-46 (emphasis added).  Judge Conway did not invoke the grounds listed in §1447(c).  Accordingly, because Judge Conway's MOO did not remand the case based on § 1447(c), the prohibition on review in § 1447(d) does not apply.  Judge Conway's MOO falls into a narrow box outside of § 1447(d), because he did not find that the federal courts lacked subject-matter jurisdiction.  If Judge Conway had gone further in his analysis or stated that he lacked jurisdiction, § 1447(d) would likely apply.

Further supporting the Court's analysis, the United States Court of Appeals for the Eighth Circuit discussed a similar procedural history as the Court faces here in Public School Retirement System of Missouri v. State Street Bank & Trust Company.  See 640 F.3d at 824.  There, the defendants removed the case, arguing that the district court had diversity jurisdiction, and the plaintiff retirement system moved to remand, arguing that it had a contractual right to be in state

court and that it was not a citizen of Missouri.  See Pub. Sch. Ret. Sys. of Mo. v. State St. Bank & Trust Co., 640 F.3d at 824.  The district court remanded, assuming without deciding that it had jurisdiction, but found that the retirement system had a contractual right to be in state court.  See Pub. Sch. Ret. Sys. of Mo. v. State St. Bank & Trust Co., 640 F.3d at 824.  After the retirement system amended its complaint to add a contract claim, the defendant again removed, and the retirement system argued that the remand order was correct.  See Pub. Sch. Ret. Sys. of Mo. v. State St. Bank & Trust Co., 640 F.3d at 824.  The Eighth Circuit held that, because the district court assumed without deciding the subject-matter-jurisdiction issue, § 1447(d) did not bar its review and proceeded to analyze whether the retirement system was an arm of the state.  See Pub. Sch. Ret. Sys. of Mo. v. State St. Bank & Trust Co., 640 F.3d at 825-31.  Although Judge Conway did not assume without deciding this question, he similarly refrained from deciding the jurisdictional issue, and nothing bars this Court's review of the Second Motion to Remand.  In Farmland National Beef Packing Co., L.P. v. Stone Container Corp., 98 F.App'x 752 (10th Cir. 2004)(unpublished), the Tenth Circuit found that § 1447(d) did not bar appellate review of the district court's remand order.  See 98 F.App'x at 756.  There, the district court found that the notice of removal was filed outside the 30-day period.  See Farmland Nat'l Beef Packing Co., L.P. v. Stone Container Corp., 98 F.App'x at 754.  The plaintiff's motion to remand was also untimely, however, and the Tenth Circuit found that, because "the district court's action was not authorized by § 1447(c), review in this court is not barred by § 1447(d)."  Farmland Nat'l Beef Packing Co., L.P. v. Stone Container Corp., 98 F.App'x at 756.

Moreover, the Defendants, following Judge Conway's directive, conducted jurisdictional discovery in state court, requesting documents and deposing Ms. Pittard, the PERA's general counsel.  While the facts have not changed, the record before the Court is substantially more

developed than the record before Judge Conway.  Judge Conway, in performing his analysis, focused on the First Notice of Remand and the facts before him.  The Second Notice of Removal is significantly more detailed than the First Notice of Removal on the issue whether the PERA is a citizen of New Mexico.  Compare First Notice of Removal ¶ 5, at 2, with Second Notice of Removal ¶¶ 12-42, at 4-17.  The Defendants relied on the Pittard deposition and other documents received in discovery to argue that the PERA is not an arm of the state.  Whether that information is ultimately successful in convincing the Court that it has jurisdiction is something that the Court will have to examine when it decides the merits of the Second Motion to Remand.  The jurisdictional discovery in which the Defendants participated, however, demonstrates that this evidence is new information before the Court.  In Zamora v. Wells Fargo Home Mortgage, 831 F.Supp.2d 1284 (D.N.M. 2011)(Browning, J.), the Court found that it lacked subject-matter jurisdiction, because the plaintiff had not yet amended her state court complaint to include a federal question, and noted that, "while Wells Fargo may ultimately be able to remove this case at a later time, the case at the time of removal fell outside the Court's subject-matter jurisdiction." 831 F.Supp.2d at 1300.  Here, Judge Conway did not go so far as the Court, and affirmatively hold that the federal court lacked subject-matter jurisdiction; rather, he held that the Defendants had not alleged sufficient facts to find that the Defendants had established jurisdiction.  The Seventh Circuit has held: "A premature removal may lead to a perfectly justified remand; but when matters change . . . the case may be removed." Benson v. SI Handling Sys., Inc., 188 F.3d at 782-83.  The Seventh Circuit noted that the "only effect of adopting an absolute one-bite rule would be to encourage plaintiffs to be coy." Benson v. SI Handling Sys., Inc., 188 F.3d at 783.  In that case, the plaintiffs challenged the district court's jurisdiction and argued that the amount-in-controversy requirement was not satisfied and, after obtaining a remand, conceded that they sought more than the jurisdictional minimum. Benson v.

SI Handling Sys., Inc., 188 F.3d at 783.  Judge Conway noted such litigation tactics at work in this case and stated that the PERA "seems to have (in)artfully drafted its Complaint so as to create a colorable argument that removal was untimely."  Conway MOO at 12.  The Defendants bring new information before the Court, after performing jurisdictional discovery.  While this information may ultimately prove unsuccessful in convincing the Court that the PERA is not an arm of the state, the Court will analyze that information in determining the merits of the Second Motion to Remand.  Accordingly, the Court finds that it has the authority to decide the Second Motion to Remand.

## II.   PERA IS AN ARM OF THE STATE FOR PURPOSES OF DIVERSITY JURISDICTION.

The Court finds that the PERA is an arm of the state based on the five-factor test that the Tenth Circuit established in Duke v. Grady Municipal Schools, see 127 F.3d at 974, and in Sturdevant v. Paulsen, see 218 F.3d at 1166.  The first factor, whether the State is liable for a judgment against the PERA, is unclear.  The other factors each, to some degree, weigh in favor of finding that the PERA is an arm of the state.  Specifically, the Court finds that the financial controls that the State has in place with regard to the PERA's funds establish that the PERA is a state instrumentality.  The Defendants have not met their burden to show that the Court has jurisdiction and that this case was removable.  Accordingly, the Court will remand the case to the First Judicial District Court.

### A.   IT IS UNCLEAR WHETHER THE STATE WOULD BE LIABLE FOR A JUDGMENT AGAINST THE PERA, BUT TO THE EXTENT THAT THIS FACTOR WEIGHS ANYTHING IN THE ANALYSIS, IT WEIGHS IN FAVOR OF ARM-OF-THE-STATE STATUS.

The Supreme Court has held that this factor focuses on one question: "If the expenditures exceed receipts, is the State in fact obligated to bear and pay the resulting indebtedness of the enterprise?"  Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. at 51.  The Tenth Circuit has held

that the question is whether "the state treasury would be <u>at risk</u> of paying a judgment" against the state entity.  <u>Duke v. Grady Mun. Schs.</u>, 127 F.3d at 980 (emphasis added).  Both parties admit that the New Mexico Legislature has remained silent whether the State would be liable for a judgment against the PERA.  <u>See</u> Second Motion to Remand at 7; Response at 8.  When the Court asked whether both sides are guessing whether the New Mexico Legislature would intervene if there was a "bet the trust" judgment, the Defendants effectively conceded that the PERA has not been involved in such litigation and responded that the Court should not speculate what may happen if there is a large judgment against the PERA.  <u>See</u> Tr. at 37:11-38:14 (Court, deVyver).

As the PERA correctly points out, the legislation establishing the ERB, N.M.S.A. 1978, §§ 22-11-1 to -55, and the legislation establishing the SIC, N.M.S.A. 1978, §§ 6-8-1 to -24, are silent regarding the State's liability for a judgment against either entity.  <u>See</u> Second Motion to Remand at 16.  Unlike the New Mexico Lottery Authority, where the New Mexico Legislature specifically provided "[n]o appropriations, loans or other transfer of state funds shall be made to the authority or used or obligated to pay the expenses of the authority or lottery prizes," N.M.S.A. 1978, § 6-24-25, or the NMMCC, where the New Mexico Legislature provided "[t]he state shall not be liable for any obligations incurred by the company," N.M.S.A. 1978, § 52-9-8, the New Mexico Legislature has remained silent with respect to the State's liability for the PERA.  Under the canon of construction of expressio unius est exclusio alterius -- the express mention of one thing excludes all others -- the express inclusion of language limiting the State's liability with respect to some state agencies and omitting such language with respect to others would imply that the New Mexico Legislature did not intend to preclude State liability for a judgment against the PERA.  <u>See Bruesewitz v. Wyeth LLC</u>, 131 S.Ct. 1068, 1076 (2011).  In <u>Salazar v. City of Albuquerque</u>, 776 F.Supp.2d 1217 (D.N.M. 2011)(Browning, J.), the Court held:

> [B]ecause the NMTCA includes defamation and malicious abuse of process in its
> waiver of immunity for law enforcement officers, but not in other waivers . . . , the
> canon of statutory interpretation expressio unius est exclusio alterius supports the
> Court's conclusion that the New Mexico Legislature has not waived immunity for
> the Mayor and the Transit Department Director.

776 F.Supp.2d at 1244-45.  Similarly, here, because the New Mexico Legislature purposefully included such language with respect to the New Mexico Lottery Authority and the NMMCC, the Court should view the omission of such language with respect to the PERA as purposeful.

The Defendants argue that no judgment against the PERA would have any effect on the State's treasury.  See Response at 12.  In Kansas Public Employees Retirement System v. Boatmen's First National Bank of Kansas City, the defendants made a similar argument that "KPERS can recover its loss through investments and that the State of Kansas cannot be forced to cover the losses by paying higher employer contributions."  982 F.Supp. at 809.  The United States District Court for the District of Kansas held that "the fact remains that the state and other governmental entities are under a contractual obligation to pay the benefits promised to their retirees" and that, because the fund would need to recover its loss in some way, "it seems most likely that the state will have to bear a large portion of that burden."  Kan. Pub. Emps. Ret. Sys. v. Boatmen's First Nat'l Bank of Kan. City, 982 F.Supp. at 809.  In that case, the state supreme court had, however, determined that, when the retirement association sought to recover losses, it was seeking "to recover millions of dollars which the public will otherwise be forced to pay in higher taxes."  Kan. Pub. Emps. Ret. Sys. v. Boatmen's First Nat'l Bank of Kan. City, 982 F.Supp. at 809.  Although there is not a similar opinion from the Supreme Court of New Mexico, the principle is the same.  If there is a shortfall in the fund, member and employer contributions must rise to cover the gap.  Because the State is a public employer whose employees make up a significant percentage of the PERA's members, the State might be forced to increase its contributions.  See Second Motion to Remand at 28.  As the

Court noted in Hill v. Vanderbilt Capital Advisors, LLC, PERA members are currently experiencing some of these increases to cover fund shortfalls.  See 2011 WL 6013025, at *20.

The Defendants argue that the Court should not speculate whether the State would be responsible for a judgment against the PERA.  See Tr. at 38:2-14 (deVyver).  The Tenth Circuit has couched its own holdings, however, in similarly uncertain language with respect to this fact and have found that it supports finding that the governmental entity in question was an arm of the state. See Watson v. Univ. of Utah Med. Ctr., 75 F.3d at 575.  In Watson v. University of Utah Medical Center, the Tenth Circuit found that statutory provisions adding the state to a governmental entity's insurance policy "suggests that the state might be responsible for funding a judgment against the University of Utah."  75 F.3d at 575 (emphasis added).  Analyzing the statutory provisions using the expressio unius est exclusio alterius canon and looking to the PERA's structure, it appears that the State may be responsible for a judgment against the PERA.  The Tenth Circuit later distanced itself from its holding in Watson v. University of Utah Medical Center and, in Sturdevant v. Paulsen, held that, when confronted with a lack of clarity as to the legal liability for a judgment, a court should proceed to resolve the arm-of-the-state question based on the remaining factors.  See Sturdevant v. Paulsen, 218 F.3d at 1166.  Given the lack of clarity regarding whether the State is liable for a judgment against the PERA, the Court will turn to the other factors in the Tenth Circuit's test.  To the extent that this factor applies, however, it weighs in favor of arm-of-the-state status, because, applying the expressio unius est exclusio alterius canon of construction, the New Mexico Legislature would have included specific language limiting the State's liability had it desired to do so.

**B.      PERA IS CHARACTERIZED AS A STATE AGENCY WHOSE FUNCTION IS INSEPARABLE FROM THE STATE'S AFFAIRS.**

In addressing whether the state law characterizes the PERA as an arm of the state, the Court may "consider both the relevant state statutes, regulations, and constitutional provisions which characterize the entity, and the holdings of state courts on the question." Kan. State Univ. v. Prince, 673 F.Supp.2d 1287, 1300 (D. Kan. 2009)(citing Harter v. Vernon, 101 F.3d 334, 342 (4th Cir. 1996)).  The Tenth Circuit has held that, even where an entity is not "explicitly defined by state statute as either an arm of the state or a political subdivision," a court should consider how the state courts characterize the governmental entity.  Sturdevant v. Paulsen, 218 F.3d at 1167-68.

Language used in various statutes suggests that the New Mexico Legislature considers the PERA an arm of the state.  In the PERA Act, the New Mexico Legislature defines "state system" as "the retirement program provided for in the Public Employees Retirement Act, the Magistrate Retirement Act or the Judicial Retirement Act."  N.M.S.A. 1978, § 10-11-2(V).  Furthermore, the New Mexico Legislature, in defining the terms "state" and "state agency," for the statutory provisions related to the Risk Management Division, provides that those terms refer to "the state of New Mexico or any of its branches, agencies, departments, boards, instrumentalities, or institutions, including regional housing authorities."  N.M.S.A. 1978, § 15-7-1.  That the statute creating the Risk Management Division, from which the PERA must purchase insurance, defines boards like the PERA as under the definition of the terms "state" or "state agency" is instructive.  A state government chart, which the New Mexico Legislature produced, also characterizes the PERA -- along with the ERB -- as an "adjunct agency."[7]  The New Mexico Legislature's language indicates

_____

[7]See Structure of New Mexico State Government, available at http://www.nmlegis.gov/lcs/stateorgchart.aspx (last visited June 20, 2012). "Adjunct agencies" are those "agencies, boards, commissions, offices, or other instrumentalities of the executive branch,

that the PERA is an instrumentality of the State.  The Supreme Court, in Pennhurst State School & Hospital v. Halderman, 465 U.S. 89 (1984), held that "[i]t is clear of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."  465 U.S. at 100 (emphasis added).  In Watson v. University of Utah Medical Center, the Tenth Circuit found important that the Utah legislature referred to the governmental entity as "state agencies" for the purposes of a risk management fund. 75 F.3d at 575.  In Sturdevant v. Paulsen, The Tenth Circuit also noted, in determining the weight of this factor, that the state courts had found that the governmental entity at issue was a state agency. See 218 F.3d at 1167.  In Gill v. Public Employees Retirement Association., the Supreme Court of New Mexico noted that the PERA is a "state agency acting as the trustee for the various retirement funds."  135 N.M. at 475, 90 P.3d at 494.  In Rainaldi v. Public Employees Retirement Board, the Supreme Court of New Mexico referred to the PERA as a "state agency" and a "state board."  115 N.M. at 651, 654, 857 P.2d at 762, 765.  The Supreme Court of New Mexico, in discussing whether the doctrine of estoppel applied against the PERA, repeatedly referred to its reluctance to use estoppel against "the state."  Rainaldi v. Pub. Emps. Ret. Bd., 115 N.M. at 657-59, 857 P.2d at 768-70 ("We are not prepared to adopt a rule that the state may never be estopped by the statement of

---

not assigned to the elected constitutional officers, which are excluded from any direct or administrative attachment to a department."  N.M.S.A. 1978, § 9-1-6.  The Defendants argue that this provision establishes that the PERA is not an arm of the state, because adjunct agencies retain policymaking control "separate from any other instrumentality of state government" and cites cases finding that "independent" agencies are not arms of the state.  Response at 17 (citing Roche v. Lincoln Prop. Co., 175 App'x at 601; Rivera-Torres v. Sistema de Para Maestros, Inc., 453 F.Supp.2d at 387).  That the PERA is not part of a department does not make it separate and apart from the State, but only independent of other arms of the state.  Section 9-1-6 specifically provides that adjunct agencies are part of the executive branch.  Furthermore, the language providing that adjunct agencies are "separate from any other instrumentality of state government" implies that adjunct agencies are instrumentalities of state government, another way of saying that they are an arm of the state.  N.M.S.A. 1978, § 9-1-6 (emphasis added).

an employee . . . .  In this case, right and justice do not demand that the Board be estopped . . . .").  In State ex rel. Public Employees Retirement Association v. Longacre, the Court of Appeals of New Mexico characterized the PERA as "a state agency responsible for administering the retirement program for its qualified members."  131 N.M. at 159, 33 P.3d at 909.  In Public Employees' Retirement Board v. Shalala, the caption of the case describes the PERA's Board as the State's "statutory agent."  153 F.3d 1160.  Although the PERA's Board is the named Plaintiff-Appellant, the Tenth Circuit stated that "the state of New Mexico alleges" and said that the "State argues." Pub. Emps. Ret. Bd. v. Shalala, 153 F.3d at 1161, 1165.  These references to the PERA as a state agency and the use of "the state" interchangeably for "the PERA" in both a Supreme Court of New Mexico and a Tenth Circuit opinion counsel in favor of finding that the PERA is an arm of the state.

Had the New Mexico Legislature desired to make the PERA independent of the State, it could have, and it has exercised this option with respect to several other governmental entities.  As the Court noted in Jornigan v. New Mexico Mutual Casualty Co., the New Mexico Legislature described the NMMCC as a "non-profit, independent, public corporation."  2004 WL 3426120, at *7 (emphasis added)(citing N.M.S.A. 1978, § 52-9-4).  The New Mexico Legislature described the NMMCC as independent from the State and identified it as a public corporation rather than a state agency.  In Lucero v. New Mexico Lottery, Judge Herrera noted that the New Mexico Lottery Authority was a body "separate and apart from the state."  2008 WL 7467977, at *2 (citing N.M.S.A. 1978, § 6-24-5).  Rather than describe the PERA as an entity separate and apart from the state, as it did with respect to the NMMCC and the New Mexico Lottery Authority, the New Mexico Legislature describes the retirement programs established in the PERA Act as a "state system." N.M.S.A. 1978, § 10-11-2(V).  Under the expressio unius est exclusio alterius canon of construction, the inclusion of this language -- separate and apart from the state -- in the statutes regarding the

-52-

NMMCC and the New Mexico Lottery Authority, and omission of this language with respect to the PERA, counsels in favor of a finding that the New Mexico Legislature does not intend for the PERA to be separate from the State.  See Salazar v. City of Albuquerque, 776 F.Supp.2d at 1244-45.

The state law classification of the PERA as a "state agency" and part of the "state system" of retirement programs weighs in favor of the conclusion that the PERA is an arm of the State of New Mexico.  Sturdevant v. Paulsen, 218 F.3d at 1168.

### C.   PERA IS SUBJECT TO THE STATE'S PERVASIVE OVERSIGHT AND CONTROL.

The PERA's structure and the PERA Act's requirements bind it to the State and weigh in favor of a determination that the PERA is an arm of state.  Initially, it appears that the PERA enjoys significant autonomy from the State, because it has "all powers necessary and convenient to carry out and effectuate the purposes and provisions of the state retirement acts."  N.M.S.A. 1978, § 10-11-130(A).[8]  See Response at 15.  The PERA also has many powers which courts have associated with entities that are not arms of the state, including the power to: (i) employ or contract with and compensate competent legal counsel to handle legal matters and litigation; (ii) sue and be sued; (iii) issue subpoenas; (iv) make and execute contracts; (v) purchase, acquire or hold land; (vi) make and adopt rules as necessary or convenient to carry out the PERA's duties; and (vii) formulate investment policy and retain outside investment management.  See Response at 14 (citations omitted).   Although the New Mexico Legislature has given the PERA broad authority to act, the

---

[8]While the PERA has broad authority under the PERA Act, its powers are not unlike the powers granted to the ERB, which two judges within this District have found is an arm of the state. See Brack MOO at 1; N.M. ex rel. Nat'l Educ. Ass'n of N.M. v. Austin Capital Mgmt., Ltd., 671 F.Supp.2d at 1252.  The ERB has the power to "properly and uniformly enforce the Educational Retirement Act" include the power to hire employees and adopt regulations.  N.M.S.A. 1978, § 22-11-6.

level of oversight and control that the State retains with respect to the PERA counsel that, despite its power, it is an arm of the state.

The first measures of oversight relate to how the PERA conducts itself and its meetings. The New Mexico Legislature enacted statutes requiring that the PERA: (i) hold four regular meetings a year with the time and place designated in advance; (ii) hold special meetings only upon the call of the chair or of three Board members; (iii) hold all meetings in compliance with the Open Meetings Act; (iv) have a quorum -- a majority -- present before making decisions; (v) hold annual meetings in Santa Fe, New Mexico; and (vi) keep all meetings open to the public. See N.M.S.A. 1978, § 10-11-130(G)-(H). The New Mexico Legislature also specifies how the PERA Board should give notice to its members of any meeting it will conduct. See N.M.S.A. 1978, § 10-11-130(G)-(H). These provisions force the PERA Board to meet certain minimum requirements. The New Mexico Legislature has also imposed guidelines that govern the exercise of the PERA's authority with respect to its investment powers. The PERA must conform with the Uniform Prudent Investor Act, N.M.S.A. 1978, § 45-7-601. See N.M.S.A. 1978, § 10-11-133(B). The PERA must provide quarterly performance reports and annual written investment policy reports to the Legislative Finance Committee and to the Department of Finance and Administration. See N.M.S.A. 1978, § 10-11-133(C). These provisions show that the State exercises oversight over the PERA. The oversight that the State maintains over the PERA is more significant than the State's oversight of the New Mexico Lottery Authority discussed in Lucero v. New Mexico Lottery. See 2008 WL 7467977, at *3-4. Like the provisions related to the PERA, the State oversees the operations of the New Mexico Lottery Authority through periodic review and reports. See Lucero v. New Mexico Lottery, 2008 WL 7467977, at *3. State oversight of the PERA is more involved than that of the New Mexico Lottery Authority, but the Court might be inclined to agree with Judge

Herrera's finding in <u>Lucero v. New Mexico Lottery</u>, if such oversight was the only indicia of state control.  Accordingly, although these provisions indicate a level of state involvement with the PERA, these facts alone are insufficient to overcome the indicia of the PERA's autonomy.

The New Mexico Legislature also put in place several provisions that establish the State's control over the PERA and cement the PERA's status as an arm of the state.  Two state officials sit on the PERA's Board -- the Secretary of State and the State Treasurer.  <u>See</u> N.M.S.A. 1978, § 10-11-120(B).  The Eighth Circuit has held that "[a] State's appointment power, even if limited, restricts an entity's political independence because it may produce 'subtle or indirect manipulation of the entity's decision-making processes by state officials.'"  <u>Pub. Sch. Ret. Sys. of Mo. v. State St. Bank & Trust Co.</u>, 640 F.3d at 828-829 (citations omitted).  The Eighth Circuit has found that an entity is an arm of the state even when none of the entity's nine board members were appointed, state officials.  <u>See</u> <u>Hadley v. N. Ark. Cmt. Technical Coll.</u>, 76 F.3d 1437, 1441-42 (8th Cir. 1996).  The presence of the State Treasurer on the Board confirms that the State is likely to succeed in manipulating the Board, because the State Treasurer is also the custodian of the funds and his permission is needed to disburse any funds.  It is unsurprising with an entity such as the PERA, where the majority of its members are state employees and the remaining members are municipal employees, that the New Mexico Legislature would be less concerned about maintaining control through appointed officials.  Furthermore, in addition to the two ex officio members of the PERA's Board, four Board members are elected "by the members under state coverage plans," which means that half of the Board members are state employees in some capacity.  N.M.S.A. 1978, § 10-11-130(B)(3).[9]  The small numbers of state appointees on the Board understates the State's presence

_____

[9]The current state members on the PERA Board include: (i) a State Police Officer; (ii) a Special Assistant Attorney General with the New Mexico Human Services Department; (iii) a

and its ability to influence the PERA's decisions.  The presence of two state officials on the PERA's

Board, and the fact that four other Board members are state employees, demonstrates the State's

managerial control over the PERA.

       The PERA also does not have as much financial control as it initially appears.  The State

Treasurer is the PERA's treasurer and the custodian of its funds.  <u>See</u> N.M.S.A. 1978, § 101-11-

131(D).  The PERA may disburse funds "only upon warrants issued by the secretary of finance and

administration based upon vouchers signed by the executive secretary or vouchers signed by the

state treasurer for purposes of investment." N.M.S.A. 1978, § 10-11-131(D).  While the PERA may

seem powerful, in that it has the authority to carry out and effectuate the PERA Act, it does not have

access to the funds <u>necessary</u> to conduct its business without the State's blessing through the persons

of the State Treasurer or of the Secretary of Finance and Administration.  This lack of access to

funds is a serious handicap that places the PERA in a subservient position to the State.  In <u>Ernst v.

Rising</u>, the United States Court of Appeals for the Sixth Circuit noted the considerable power the

state treasurer had, as the custodian of the retirement system's funds.  <u>See</u> 427 F.3d at 1160.  In

<u>McGinty v. New York</u>, the Second Circuit held that similar oversight functions which the state

superintendent of insurance performed, while not constituting a veto power, were evidence of a

strong oversight protection which tipped this factor towards Eleventh Amendment immunity.

<u>See</u> 251 F.3d at 98-99.  Reinforcing its lack of financial independence, Ms. Pittard responded at the

hearing that the PERA is self-funded, so most costs come from trust-fund assets, but asserted that

---

Special Programs Director for the Thirteenth Judicial District Attorney's Office; and (iv) a Tax
Accounts Auditor with the New Mexico Taxation and Revenue Department.  <u>See</u> PERA Board
Members, http://www.pera.state.nm.us/boardmembers.html (last visited June 21, 2012).  As Ms.
Pittard testified at her deposition, these four Board members are elected by the state-plan members
and are themselves state-plan members.  <u>See</u> Pittard Depo. at 23:15-19.

the PERA is required to get those monies approved through the budget process with the State.  See

Tr. at 15:14-17 (Pittard).  She then clarified that, although the PERA does not get general funding

from the State, it has to go through the budget process to have trust funds appropriated for the fund's

administration.  See Tr. at 16:16-19 (Pittard).  The connection between the PERA and the Attorney

General's Office is further evidence that the State exercises significant control over the PERA.  The

Attorney General is the PERA's legal counsel.  See N.M.S.A. 1978, § 10-11-130(A).[10]  At the

hearing, the PERA represented that its counsel, Ms. Katz, was appearing as a Special Assistant

Attorney General and that her firm has a contract with the Attorney General's Office.  See Tr. at

7:25-8:23 (Court, Katz).  Additionally, Ms. Pittard represented that, as general counsel, she has to

receive a special commission from the Attorney General's office to execute any contracts over

$200,000.00 and that all contracts, other than investment contracts, are required to go to the

Department of Finance and Administration for approval.  See Tr. at 19:7-20 (Court, Pittard).[11]

See also Pittard Depo. at 48:8-15.  These facts further demonstrate the connection between the State

and the PERA, because they show that the State retains control over the PERA's contracts, who the

PERA hires as counsel, and whether their counsel can litigate in court.  The Sixth Circuit has also

considered the fact that the state attorney general acts as legal counsel for a governmental entity as

weighing in favor of arm-of-the-state status.  See Ernst v. Rising, 427 F.3d at 360.

---

[10]The Court notes that, in its work as an Deputy Attorney General, it appeared before the PERA, advised the PERA, and considered the PERA to be a client.

[11]Former Attorney General Hal Stratton notes in his book on the Attorney General's Office that the PERA has two state agency attorneys and that state agency attorneys must be commissioned as Special Assistant Attorney Generals to litigate in court.  See H. Stratton & P. Farley, Office of the Attorney General State of New Mexico: History, Powers & Responsibilities 1846-1990, at 118-120 (1990) (citing N.M.S.A. 1978, § 8-5-4).  The Attorney General can take away their commission if the PERA does not act as the Attorney General wishes.

The PERA operates a state-wide retirement system.  In <u>Sturdevant v. Paulsen</u>, the Tenth

Circuit found that the Colorado State Board for Community Colleges and Occupational Education's

state-wide focus was indicative of the board's status as a state-wide central administration and arm

of the state.  <u>See</u> 218 F.3d at 1169.  In <u>McGinty v. New York</u>, the Second Circuit found that the

retirement system was a traditional state function, rather than one of local government, and that,

"[a]lthough the Retirement System does not service state employees exclusively, it assists in the

business of the state by enabling the state to meet its pension and benefits obligations, and immunity

should accordingly be extended to the Retirement System." 251 F.3d at 98.  As the Court previously

noted, the PERA is an adjunct agency and part of the executive branch.  <u>See</u> N.M.S.A. 1978, § 9-1-6

("'Adjunct agencies' are those agencies, boards, commissions, offices or other instrumentalities of

the <u>executive branch</u>." (emphasis added)).   Together, the oversight and control that the State

exercises over the PERA is significant, and supports a finding that the PERA is an arm of the state.

Furthermore, the PERA shares many attributes with the ERB and SIC that have been found

to be arms of the state.  <u>See</u> <u>N.M. ex rel. Nat'l Educ. Ass'n of N.M. v. Austin Capital Mgmt., Ltd.</u>,

671 F.Supp.2d at 1252 (finding that there is "no question" that the SIC and ERB are arms of the

state).  In <u>Eastwood Enterprises v. Farha</u>, the Middle District of Florida noted that the "New Mexico

State Investment Council and Public Employees Retirement Association of New Mexico[] are

closely related," because "[t]hey share overlapping management and representation; specifically,

the New Mexico Treasurer sits on the boards of both entities and both entities are represented in

legal matters by the Office of the New Mexico Attorney General."  2008 WL 687351, at *3.[12]  In

---

[12]<u>Eastwood Enterprises v. Farha</u> is a case concerning "violations of the federal securities laws
by WellCare Health Plans, Inc." brought on behalf of Eastwood Enterprises, LLC individually and
on behalf of all others similarly situated.  2008 WL 687351, at *1.  In this opinion, the Honorable
Susan C. Bucklew, United States District Judge for the Middle District of Florida, consolidated

New Mexico ex rel. National Education Association of New Mexico v. Austin Capital Management, Ltd., many of the statutory provisions on which Judge Black relied to find that the ERB is an arm of the state mirror the statutory provisions applicable to the PERA.  Judge Black noted that the "the Legislature has established statutory requirements controlling the number of times per year the ERB must meet, whether a quorum is required for the transaction of business, and the employment of expert advisors by the ERB."  See N.M. ex rel. Nat'l Educ. Ass'n of N.M. v. Austin Capital Mgmt., Ltd., 671 F.Supp.2d at 1253 (citing N.M.S.A. 1978, §§ 22-11-4 to -9).  The New Mexico Legislature has established similar requirements for the PERA.  Mirroring the provisions that Judge Black discusses with respect to the ERB, the New Mexico Legislature provides that the PERA: (i) must hold four regular meetings each year, see N.M.S.A. 1978, § 10-11-130(G); (ii) must have a quorum present for a Board decision, and that a quorum is a majority, see N.M.S.A. 1978, § 10-11-130(G); and (iii) may employ investment management services to advise it regarding the investment of funds, see N.M.S.A. 1978, § 10-11-133(E).  Judge Black also found it significant that "the state treasurer is the custodian of the educational retirement fund that is administered by the ERB, and disbursements from the fund are made through the state's department of finance and administration."  N.M. ex rel. Nat'l Educ. Ass'n of N.M. v. Austin Capital Mgmt., Ltd., 671 F.Supp.2d at 1253 (citing N.M.S.A. 1978, §§ 22-11-11 to -12).  Similarly, the State Treasurer is the custodian of the PERA's funds, and distribution of PERA funds may be made only upon "warrants

several cases, appointed the "Public Pension Funds" Group as lead plaintiff, and approved the Public Pension Funds Group's selection of lead counsel.  Eastwood Enters. v. Farha, 2008 WL 687351, at *1.  The Public Pension Funds Group consisted of: (i) the SIC; (ii) the PERA; (iii) the Teachers' Retirement System of Louisiana; (iv) the Policeman's Annuity and Benefit Fund of Chicago; and (v) the Public School Teacher's Pension & Retirement Fund of Chicago.  See Eastwood Enters. v. Farha, 2008 WL 687351, at *1 n.1.  Judge Bucklew discussed the similarities between the SIC and PERA in the course of her decision regarding lead plaintiff status.  See Eastwood Enters. v. Farha, 2008 WL 687351, at *2.

issued by the secretary of finance and administration."  N.M.S.A. 1978, § 10-11-131(D).  These provisions, which formed the basis for Judge Black's decision and which Judge Brack followed in the Brack MOO, are substantially the same as the provisions regarding the PERA.  Accordingly, because there is "no question" that the ERB is an arm of the state based on these provisions, they similarly support a finding that state control is such that the PERA is arm of the state as well.

Because the statutory provisions related to the PERA show that the PERA is subject to a substantial degree of state control and because the same provisions apply to the ERB as to the PERA, the Court finds that the state-control factor weighs in favor of finding that the PERA is an arm of the state.

## D.    THE    STATE    OF    NEW    MEXICO    MAKES    SUBSTANTIAL CONTRIBUTIONS TO THE PERA.

The Defendants argue that the PERA is "completely self-funded."  Response at 19.  In McGinty v. New York, the Second Circuit held that "the Retirement System is not self-sustaining as it requires contributions from employees, the state, and other participating employers."  251 F.3d at 99.  The Defendants argue that McGinty v. New York is not relevant, because there the retirement system received appropriations from the state as well.  See Response at 20.  This language makes clear, however, that when it determined that the fund was not self-sustaining, the Second Circuit was focused on the contributions it received from employees and employers, including the state, under the act.  See McGinty v. New York, 251 F.3d at 99.  The PERA has 59,620 active members, of which 25,227 are State members, and 27,972 retired members, of which 14,138 are State members.  See Second Motion to Remand at 28.  Thus, approximately half of the PERA's members and half of its contributions are from the state.  Additionally, although the State does not make general appropriations to the PERA, the New Mexico Legislature approves its budget and, without such

approval, the PERA lacks the authority to draw the funds to operate.  See Tr. at 16:16-19 (Pittard).

In Sturdevant v. Paulsen, the board similarly raised and spent moneys within its fund, but only under

the Colorado Commission on Higher Education's supervision.  See 218 F.3d at 1170.  The Tenth

Circuit held that there were factors which weighed on both sides of the arm-of-the-state analysis.

See Sturdevant v. Paulsen, 218 F.3d at 1170.  Here, there are also factors which weigh on both sides

of the analysis.  The State appears to be the largest employer contributor to the fund and, although

the PERA does not receive appropriations from the State, neither can it continue to fund employee

pensions without such contributions.  Because the State is the largest contributor to the PERA and

controls the PERA's authority to draw funds, the Court believes that this factor weighs in favor of

finding arm-of-the-state status.

###        E.        THE PERA CANNOT ISSUE BONDS OR LEVY TAXES.

The PERA and the Defendants agree that the PERA cannot issue bonds or levy taxes.

See Second Motion to Remand at 29; Response at 22.  The Defendants argue that "the fact [the

PERA] does not have the ability to issue bonds or levy taxes is a neutral consideration," because the

PERA is "completely self-funded and self-sufficient."  Response at 22.  It argues that, in Lucero v.

New Mexico Lottery, Judge Herrera found that, "although the NMLA cannot levy taxes and could

only issue bonds at its creation for its initial development and operation, the factor was 'neutral.'"

Response at 22 (citing Lucero v. N.M. Lottery, 2008 WL 7467977, at *5).  In Lucero v. New

Mexico Lottery, however, the New Mexico Lottery Authority issued revenue bonds to obtain its

initial funding, see 2008 WL 7467977, at *5, whereas the PERA obtained a one-time fixed

membership fee to establish its initial funding, see House Bill No. 111 § 2 (dated March 20, 1947),

filed December 1, 2011 (Doc. 11-3); Response at 22.  Furthermore, the Court disagrees that the fact

that an entity's initial funding comes from revenue bonds, but the entity does not have the power

to issue other bonds or levy taxes, renders this factor neutral.  In <u>Sturdevant v. Paulsen</u>, the Tenth

Circuit addressed a board that had "the power, with certain limits, to issue bonds," but "most

certainly lack[ed] the power to levy taxes."  218 F.3d at 1170.  The Tenth Circuit found that

> the absence of taxing authority and the degree to which Colorado law provides that
> the Board's issuance of bonds and setting of fees are to be carried out in accordance
> with legislative appropriations, which themselves are influenced by a budget
> reviewed by the CCHE, <u>ultimately tip the balance more towards a finding of arm-of-
> the-state status</u>.

<u>Sturdevant v. Paulsen</u>, 218 F.3d at 1170 (emphasis added).  There, the Tenth Circuit found that, even

though the entity in question could currently issue bonds, the state restrictions on those issuances

meant this factor weighed in favor of arm-of-the-state status.  As the Second Circuit held, a

retirement system is not self-sustaining, because it "requires contributions from employees, the state

and other participating employees."  <u>McGinty v. New York</u>, 251 F.3d at 99.  Additionally, although

the PERA had a one-time influx of funds in 1946 through a membership fee, all parties agree that

the PERA does not currently possess the ability to issue bonds or levy taxes.  Accordingly, the Court

finds that this factor weighs in favor of finding that the PERA is an arm of the state and is stronger

than <u>Sturdevant v. Paulsen</u>, where the governmental entity could issue bonds in limited

circumstances.

The Court has lived in the State, appeared before the New Mexico Legislature, and worked

as a Deputy Attorney General.  It has represented the PERA.  Most New Mexico employees who

participate in the fund, would view the PERA, in layman's terms, to be the State.  It would surprise

most New Mexicans if the Court said that the PERA was not an arm of the state and under State

control.  After reviewing the Tenth Circuit's factors, one factor is unclear and neutral, but the

remaining factors weigh, in varying degrees, in favor of finding that the PERA is an arm of the state.

The burden is on the Defendants to establish that the Court has jurisdiction, and all doubts are to be

resolved against removal.  See Montoya v. Chao, 296 F.3d at 955 (10th Cir. 2002); Fajen v. Found. Reserve Ins. Co., 683 F.2d at 333.  The Court finds that the PERA, like the State's other governmental investment vehicles -- the ERB and the SIC -- are arms of the state.  Because the PERA is an arm of the state, it is not a citizen of the State of New Mexico, and the Court does not have diversity jurisdiction.  See Moor v. Alameda Cnty., 411 U.S. at 717.  The Court will therefore remand this case to the First Judicial Distr Court, because it lacks subject-matter jurisdiction.

## III.   THE COURT FINDS THAT THE DEFENDANTS HAD AN OBJECTIVELY REASONABLE BASIS TO FILE THE SECOND NOTICE OF REMOVAL.

The PERA asks the Court to order the Defendants to bear costs and expenses, including attorney's fees, incurred as a result of the removal, because the Defendants improvidently removed the case.  See Second Motion to Remand at 30.  The PERA contends that the Defendants' "second improper removal has needlessly delayed resolution of this case, added unnecessary expense, and wasted the court's limited judicial resources."  Second Motion to Remand at 30.  "An order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal."  28 U.S.C. § 1447(c). The Supreme Court has held that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  Martin v. Franklin Capital Corp., 546 U.S. at 141.  It is not necessary that a plaintiff show that a defendant acted in bad faith to win attorney's fees.  See Topeka Hous. Auth. v. Johnson, 404 F.3d 1245, 1248 (10th Cir. 2005).

The Defendants made "good-faith arguments, with supporting authority, that removal was appropriate."  Bio-Tec Envtl., LLC v. Adams, 792 F.Supp.2d 1208, 1222 (D.N.M. 2011)(Browning, J.).  This case presented challenging issues, because the New Mexico Legislature is silent on the

-63-

question whether the State is responsible for a judgment against the PERA.  The PERA admits that this factor is the most important factor, and, in its analysis, the Court finds that this factor was neutral, because neither the New Mexico Legislature nor the state courts indicate whether the State would be responsible for a judgment against the PERA.  See Second Motion to Remand at 15 (citing Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. at 48).  Furthermore, the Defendants rely on Judge Herrera's opinion in Lucero v. New Mexico Lottery, in which she examined some of the same factors to which the Court in this case and determined that the New Mexico Lottery Authority was not an arm of the state.  Although the Court distinguished Lucero v. New Mexico Lottery in some instances and disagreed with it in others, that case provided persuasive authority and an objectively reasonable basis to remove.  Furthermore, the Defendants have identified a split in authority and have provided the Court with cases that demonstrate that the federal courts are not unanimous in determining that state-retirement systems are arms of the state.  See Response at 8 (citations omitted).  In citing this authority, the Defendants attempt to refute Judge Conway's statement that "[w]hat drives the Court's determination today is the nature of the Plaintiff/entity and the fact that nearly every court considering the question, including a federal court in the District of New Mexico, has determined that state retirement associations are 'arms of the state,' and not 'citizens' of any state."  Conway MOO at 9-10.  Judge Conway recognized that "a fact-bound inquiry must be made to determine PERA's status" and determined that the First Notice of Removal was "premature"; he did not decide that the Court lacked jurisdiction because PERA was an arm of the state.  Conway MOO at 10-11.  While the Court finds that the PERA is an arm of the state, the Court cannot say that it was objectively unreasonable for the Defendants to argue that the PERA was not.  The Court will therefore deny the PERA's request for costs and fees under 28 U.S.C. § 1447(c).

        **IT IS ORDERED** that the Motion to Remand the Case to State Court and for the Payment

of Costs and Expenses Including Attorney's Fees, filed November 17, 2011 (Doc. 5), is granted in part and denied in part. Because the Public Employees Retirement Association ("PERA") is an arm of the State of New Mexico, it is not a citizen of New Mexico for the purposes of diversity jurisdiction. Accordingly, the Court lacks subject-matter jurisdiction and will remand the case to the First Judicial District Court, County of Santa Fe, State of New Mexico. The Court will not, however, order that the Defendants bear the PERA's costs and expenses, including attorney's fees, incurred as a result of removal, because the Defendants had an objectively reasonable basis to remove.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

John B. Pound
Mark T. Baker
Jennifer L. Attrep
Long, Pound & Komer, P.A.
Santa Fe, New Mexico

--and--

Stanley D. Bernstein
Rebecca M. Katz
David B. Harrison
James M. Weir
Brian Lehman
Bernstein Liebhard LLP
New York, New York

       *Attorneys for the Plaintiff*

Ross L. Crown
Erin Langenwalter
Lewis and Roca LLP
Albuquerque, New Mexico

--and--

Jack B. Cobetto
Jayme Butcher
K. Issac deVyver
Mary J. Hackett
Reed Smith, LLP
Pittsburgh, Pennsylvania

*Attorneys for the Defendants*